**Richard STADT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–01–01272–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 9, 2003.

---

Rusty Hardin, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## SUBSTITUTE OPINION

JOHN S. ANDERSON, Justice.

We withdraw our opinion issued June 19, 2003, substitute the following opinion in its place, and overrule appellant's motion for rehearing.

Appellant Richard Stadt was convicted by a jury of criminally negligent homicide. *See* TEX. PEN.CODE ANN. § 19.05(a) (Vernon 2003). The trial court sentenced appellant to three years' confinement, but suspended the sentence and placed appellant on community supervision for three years. Asserting three points of error, appellant appeals his conviction. We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

On January 31, 2000, appellant was driving a tractor-trailer rig southbound in the right lane of Interstate 45 as he approached the Spring–Stuebner overpass in Spring, Texas. This particular stretch of highway is considered to be very dangerous. Because of construction, there were no shoulders along the highway at this location. Instead, there were concrete barriers located along the right edge of the roadway.

As appellant crossed the overpass, he changed lanes in an attempt to pass a slower-moving vehicle. Although the posted speed limit was 55 mph, the State's witnesses testified appellant was traveling between 65 and 75 mph. His tire hit the right concrete barrier near the top of the overpass, causing the front right portion of

his truck to rise up. His truck ricocheted to the left, climbed over the guardrail and became airborne into the oncoming northbound traffic. It hit a white pick-up truck, driven by complainant Dale Turner, and a maroon 18–wheel rig, driven by complainant John Braun, before coming to rest on the northbound side of the highway.

Both complainants were killed as a result of the accident. Appellant escaped relatively unhurt and was treated and released from a local hospital emergency room.

In February 2000, a grand jury indicted appellant for the offense of criminally negligent homicide in cause numbers 0837061 and 0837062. *See* Tex. Pen.Code Ann. § 19.05(a). In October 2000, the grand jury re-indicted appellant for the greater offense of manslaughter in cause numbers 0859258 and 0859259. *See* Tex. Pen.Code Ann. § 19.04(a) (Vernon 2003). The State proceeded to trial on cause number 0859259 on November 27, 2001.

At the close of evidence, the trial court presented its proposed jury charge to both parties. The proposed charge included the offenses of criminally negligent homicide and manslaughter. Although appellant objected to inclusion of the lesser offense, the jury received instructions on both offenses.

The jury convicted appellant of criminally negligent homicide and recommended a probated sentence. The trial court sentenced appellant to three years' confinement in the Texas Department of Criminal Justice, State Jail Division, but suspended the sentence and placed appellant on community supervision for three years. Appellant timely filed notice of appeal.

## Issues on Appeal

On appeal, appellant asserts (1) there is legally and factually insufficient evidence for a jury to have found he committed criminally negligent homicide; (2) the trial court erred when it instructed the jury on the lesser included offense of criminally negligent homicide; and (3) the trial court erred when it refused to quash appellant's indictment for manslaughter.

## I. Sufficiency of the Evidence

In his first point of error, appellant asserts the evidence is legally and factually insufficient to support a jury finding that he committed criminally negligent homicide. No evidence exists, argues appellant, that he was "criminally negligent" as this term is defined by Texas law. We disagree.

## A. Legal sufficiency

To determine legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995). On appeal, this court is not to re-evaluate the weight and credibility of the evidence; rather, we consider only whether the jury reached a rational decision. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *See Soto v. State*, 864 S.W.2d 687, 691 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

To secure a conviction for criminally negligent homicide, the State must present evidence that a person caused the death of an individual by criminal negligence. Tex. Pen.Code Ann. § 19.05(a). A person acts

with "criminal negligence" when he or she "ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PEN. CODE ANN. § 6.03(d) (Vernon 2003); *Cooks v. State,* 5 S.W.3d 292, 297 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *see Lewis v. State,* 529 S.W.2d 550, 553 (Tex. Crim.App.1975) (stating the key to criminal negligence is found in the failure of the actor to perceive the risk). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." TEX. PEN.CODE ANN. § 6.03(d).

In the instant case, to survive a legal sufficiency challenge, there must be evidence in the record that (1) appellant caused the death of complainants; (2) appellant ought to have been aware there was a substantial and unjustifiable risk of death from his conduct; and (3) appellant failed to perceive the risk and his failure constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *See id.;* TEX. PEN.CODE ANN. § 19.05(a). We conclude the State met this burden.

■ First, it is uncontroverted that appellant caused the death of both complainants.[1]

Second, there is evidence appellant "ought to have been aware" of the "substantial and unjustifiable risk" of death surrounding his conduct, and that his failure to perceive this risk deviated grossly from the standard of care exhibited by ordinary "big rig" drivers in like circumstances.

**(1) Appellant "ought to have been aware" there was a substantial risk of death if he made an error crossing the bridge.**

■ The following evidence suggests appellant "ought to have been aware" that failure to exercise proper care on the Spring–Stuebner overpass would result in a substantial and unjustifiable risk of death:

- Appellant had driven over the Spring–Stuebner bridge in the same or similar tractor-trailer approximately 300–400 times;

- Appellant was familiar with the bridge; was aware the lanes on the bridge were narrow; knew the speed limit dropped immediately before the bridge's entrance; and knew the bridge had been the site of several fatal accidents;

- Appellant told two different witnesses the day of the accident that he had

---

**1.** Appellant admits he caused the death of complainants, but asserts his conduct constituted only "ordinary negligence" rather than "criminal negligence." *See Rowan v. Allen,* 134 Tex. 215, 134 S.W.2d 1022, 1025 (1940); *Ray v. Zackey,* 329 S.W.2d 350, 351 (Tex.Civ. App.-Waco 1959, no writ); *Wood v. Orts,* 182 S.W.2d 139, 140 (Tex.Civ.App.-San Antonio 1944, writ dism'd); *Glassman v. Feldman,* 106 S.W.2d 721, 722–23 (Tex.Civ.App.-Amarillo 1937, no writ). His argument is of no moment.

First, the Texas cases appellant cites all involve civil liability, not criminal convictions.

A finding of "gross negligence" in a civil case is much more akin to a finding of "recklessness" in a criminal case, not "criminal negligence." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 20 n. 10 (Tex.1994). Second, the criminal cases appellant cites from other jurisdictions are not binding on this court: *State v. Larsen,* 999 P.2d 1252 (Utah Ct.App. 2000); and *State v. Garrett,* 525 So.2d 1235 (La.Ct.App.1988). Finally, none of the cases cited by appellant involves a tractor-trailer rig. Evidence presented at trial suggests tractor-trailer drivers are held to a different standard of care than those driving automobiles.

been afraid of the bridge "for a long time";

- Appellant was aware tractor-trailers needed to be operated in a safer manner than other vehicles "because there was less room for error";
- Appellant usually drove on the bridge in the left-hand lane rather than in the right-hand lane next to the concrete barrier;
- Drivers who frequented that stretch of highway were aware the bridge was rough, narrow, and dangerous;
- The bridge's nickname in Spring—where the bridge was located—was "death bridge";
- There was construction at the bridge the day of the accident;
- The bridge had no shoulder at the site of the accident and the concrete barrier hit by appellant's rig was only 6 to 18 inches from the highway's edge;
- Tractor-trailers should be driven 5 mph slower than posted speed limits in construction zones and tractor-trailer drivers should slow down when they approach such overpasses—even when driving the posted speed of 55 mph;
- Experienced tractor-trailer drivers (1) lose control in construction areas if they drive faster than 55 mph; (2) feel their trucks bounce if they drive too fast; and (3) slow down if their trucks begin to bounce; and
- Appellant's rig was bouncing and weaving as he approached the bridge, his speed was unsafe, and he "should have slowed down" in order to prevent his tractor-trailer rig from striking the right-hand concrete barrier.

The foregoing evidence supports a finding that appellant "ought to have known" that if he drove too fast or went off the road even a couple of inches, there was a substantial risk of injury or death to others.

■ **Appellant "failed to perceive" the risk of death and this failure deviated grossly from the standard of care that an ordinary person would exercise under similar circumstances.**

■ Although evidence suggests appellant ought to have been aware of the danger of death on the Spring–Stuebner bridge, his conduct indicates he failed to appreciate this danger:

- Appellant drove between 65 and 75 mph as he entered the bridge, despite a posted speed limit of 55 mph;
- Appellant maintained his speed as he approached the bridge, despite (1) the rest of the traffic slowing down; (2) his rig bouncing; (3) his awareness there was a possibility of his right front tire clipping the barrier; and (4) his awareness there had been numerous accident-related deaths on the bridge;
- Appellant changed lanes to pass another vehicle, even though his normal routine was to remain in the left-hand lane; and
- Appellant took his eyes off the road "just to see what was going on around [him]" and failed to keep a proper lookout as he approached the bridge, despite his knowledge that the lanes were getting narrower.

■ There is also evidence to suggest appellant's failure to appreciate the risk of death was a gross deviation from the standard of care exercised by an ordinary person in appellant's situation:

- Defense witness Orville Sanders testified he took extra precautions every time he drove over the bridge and, as a former tractor-trailer driver himself, knew tractor-trailer drivers should take even greater precaution;

- Several defense witnesses testified appellant maintained his speed on the bridge while other traffic slowed down;
- The posted speed limit on the bridge was 55 mph;[2] and
- A professional tractor-trailer driver and driving instructor who witnessed the accident testified that, in his experience, tractor-trailer drivers are taught to drive with the flow of traffic; they know to be alert to bobbing and weaving; they slow down when their rigs bob and weave; they know speeds in excess of 55 mph are "too rough" for taking a bridge like the Spring–Stuebner overpass; and they travel five mph under the posted speed limits in construction zones.

We conclude there was sufficient evidence to permit a rational jury to find that ordinary persons in like circumstances would have exercised greater care. Thus, all the essential elements of criminal negligence are satisfied—namely, that appellant "ought to have perceived" the risk of death surrounding his conduct, he failed to do so, and his failure constituted "a gross deviation" from the standard of care that an ordinary person would exercise under all the circumstances viewed from the standpoint of a driver of a tractor-trailer rig. *See* Tex. Pen.Code Ann. § 6.03(d). Accordingly, we find the evidence is legally sufficient to uphold appellant's conviction.

## B. Factual sufficiency

■ Appellant also asserts the evidence is factually insufficient to support a jury finding that he committed criminally negligent homicide. To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Because appellant testified at the guilt stage, and presented other exculpatory evidence, he contends the evidence greatly outweighed the State's evidence to the extent that the contrary finding is clearly wrong and manifestly unjust. *See id.* at 11. The proper factual sufficiency standard of review for the latter argument is whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.*

We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute, and compare it to the evidence tending to disprove that fact. *Id.* at 7. The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination, or when contrary evidence is presented, that the finding of guilt was against the great weight and preponderance of the evidence. *Id.* at 11. However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for the factfinder's. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id.*

To controvert the State's evidence that appellant committed criminally negligent homicide, appellant offered the following evidence:

- Appellant's testimony that he was safety-conscious because he had conducted a pre-trip inspection of his rig; stopped his truck to take a nap so he would be rested during his trip; had

2. Texas law provides that "[a] speed in excess of the limits ... is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful." Tex. Transp. Code Ann. § 545.352(a) (Vernon Supp.2003).

his truck weighed; conducted a tire inspection mid-trip; made a safe and proper lane change two miles before the overpass; and checked his mirrors during his bridge-crossing;

- Testimony that neither drugs nor alcohol contributed to the accident;

- Defense testimony that traffic was light; weather was dry and clear; and visibility optimal;

- Testimony that appellant was traveling with the flow of traffic and that all traffic was exceeding the speed limit;

- Testimony that appellant's rig was not bouncing as it climbed the overpass; that appellant was not driving at an unreasonable or careless speed; and that appellant's engine was "governed" at 65 mph;

- Appellant's familiarity with the road and overpass;

- Testimony that appellant's drift outside his lane was minimal and that he only "clipped" the barrier;

- Evidence that the barrier hit by appellant was not 18 inches from the fog line, as claimed by the State, but rather 6 inches; and

- Testimony that the overpass was not dangerous, not unsafe, and not widely known as "death bridge."

Arguing the evidence above "greatly outweigh[s]" the State's proof, appellant asserts the State's evidence is "factually insufficient." We disagree.

When conflicts in evidence arise, an appellate court may not substitute its judgment for that of the fact-finder. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex. Crim.App.1996). Reconciliation of conflicts in the evidence is the exclusive province of the jury. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). Unless the available record clearly reveals a different result is appropriate, an appel-

late court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered. *Johnson,* 23 S.W.3d at 8.

Here, appellant emphasizes evidence demonstrating his safety awareness: he did not take drugs or alcohol, did not drive at an unreasonable or high rate of speed, and did not drive in a way that would cause his trailer to bounce and be unsafe, but there is also evidence to contradict these assertions. For example,

- To rebut appellant's claim that drugs and alcohol were not related to the accident, the State offered evidence appellant told someone at the scene that he was a "little drowsy" because he had taken some medication earlier in the day;

- To rebut appellant's claim he was driving safely and at a reasonable speed, the State offered the testimony of witness Tom Marinelli—a professional truck driver and driving instructor with 22 years experience, who had completed three million miles in a tractor-trailer without an accident. Marinelli, who was driving behind appellant at the time of the accident, testified the condition of the overpass was rough; appellant's rig bobbed and weaved as he entered the bridge; and appellant's bobbing and weaving truck indicated appellant was driving "too fast" for road conditions;

- To rebut evidence appellant was traveling "with the flow of traffic," the State offered (1) the testimony of Andrew Johnston, a motorist driving near the accident site, who testified that when he entered the freeway behind appellant's tractor-trailer and a white vehicle, "the big rig was pulling

away" from the white vehicle; (2) the testimony of Officer David Whitehead, who claimed appellant overtook him at a "pretty rapid pace" and was in the process of passing his vehicle when appellant struck the barrier; (3) the testimony of Marinelli, who claimed appellant was going "too fast"; and (4) the testimony of appellant himself, who admitted he remembered "coming up" on Officer Whitehead's pickup and moving into the right lane of traffic to pass the pickup on the right; and

- To rebut evidence appellant's drift outside his lane was minimal and appellant only "clipped" the concrete barrier, the State offered pictures of severe gouges in the barrier—as well as appellant's own testimony that he knew the bridge was narrow and knew his trailer needed to be operated in a safer manner than other vehicles "because there [was] less room for error."

■ Viewing the evidence in a neutral light, we find a jury reasonably could have rejected appellant's testimony and the testimony of defense witnesses and concluded that, although appellant was aware of a number of facts related to the risk of death on the bridge, he failed to appreciate the substantial and unjustifiable risk his conduct created in light of those facts.[3] A factual sufficiency review must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7. After conducting that review, we cannot say the proof of guilt is greatly outweighed by contrary proof. *See id.* at 11. Accordingly, we find the evidence to be legally and factually sufficient to support the jury's guilty verdict and overrule appellant's first point of error.

## II. Lesser Included Offense

In his second point of error, appellant asserts the trial court erred by instructing the jury on the lesser included offense of criminally negligent homicide because no evidence permitted the jury to rationally find that if appellant was guilty, he was guilty only of the lesser offense. We disagree. This issue is similar to appellant's first issue challenging the legal sufficiency of the evidence supporting the jury's verdict finding appellant guilty of criminally negligent homicide. But in this issue, appellant contends that because there is no evidence that he was unaware of the risk created by his conduct, the jury charge improperly included an instruction on criminally negligent homicide.

## A. Standard of review

The trial judge has the legal duty and responsibility to prepare for the jury a

---

3. Appellant makes conclusory statements that there is "no evidence" to support a finding appellant failed to perceive the risk of death. Indeed, he asserts the contrary: that the evidence supports a finding appellant *knew* of the risk. The only inquiry, asserts appellant, is whether or not appellant disregarded the risk. We disagree. The test is whether appellant was unaware of the risk of death that could result from his conduct.

Risk perception may be proved inferentially. *See, e.g., Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim.App.1998) ("The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon."). Here, the jury was free to choose to: (1) reject the State's evidence; (2) interpret it as supporting the inference appellant was aware of the risk; or (3) interpret it as supporting the inference appellant was unaware of the risk. The jury chose the latter.

proper charge distinctly setting forth the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003). Article 37.08 codifies the common-law lesser included offense and provides, in a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense. TEX.CODE CRIM. PROC. ANN. art. 37.08 (Vernon 1981). Article 37.09 provides the test for determining whether an offense is a lesser included offense pursuant to article 37.08. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981). The Texas Court of Criminal appeals has articulated the test as follows: "[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and second, *some* evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim.App.1993) (first emphasis added).

As a matter of federal and state law, a conviction for a lesser offense constitutes an acquittal of the greater offense. *See Green v. United States*, 355 U.S. 184, 190–91, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); TEX.CODE CRIM. PROC. ANN. art. 37.14 (Vernon 1981).

Appellant concedes, as he must, the first prong of the test, that criminally negligent homicide is a lesser included offense of manslaughter, because criminal negligence is a lesser culpable mental state than recklessness. *Aliff v. State*, 627 S.W.2d 166, 171 (Tex.Crim.App.1982). The issue, therefore, is whether there is *some* evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser

offense, the second prong of the test articulated in *Rousseau*.

## B. Evidence Supporting the Second Prong of *Rousseau*

█ Regarding the second prong of the *Rousseau* test, we focus on whether any evidence exists in the record that would permit a rational jury to find that the defendant is guilty only of criminally negligent homicide. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994). Anything more than a scintilla of evidence is sufficient to entitle a defendant or the State to a charge on the lesser included offense. *See id.* All trial evidence should be considered to determine if there is more than a scintilla of evidence to support the requested charge. *Id.* The defense or the prosecution is entitled to the charge regardless of which party offered the evidence, and regardless of whether it is weak, impeached, or contradicted. *See Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim.App.1985).[4]

█ Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. [Panel Op.] 1978). Ordinarily, it must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Fuentes v. State*, 880 S.W.2d 857, 860 (Tex.App.-Amarillo 1994, pet. ref'd). The issue of whether recklessness or criminal negligence is shown—that is, whether one is aware of the risk or simply fails to perceive it—is a conclusion to be drawn through inference from all the circumstances by the trier of fact. *See Dillon*, 574 S.W.2d at 94; *see also Thompson v. State*, 676 S.W.2d 173, 176–77 (Tex.App.-Houston [14th Dist.] 1984, no pet.) (finding proof of defendant's failure to perceive risk

---

4. The second prong of the *Rousseau* test applies to the State as well as to defendants.

*Arevalo v. State*, 943 S.W.2d 887, 890 (Tex. Crim.App.1997).

where defendant drove her car at an excessive speed in a residential neighborhood near a bus stop at a time when children were on their way to school).

■ It is not enough that the jury disbelieves evidence pertaining to the greater offense; rather, there must be "some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex.Crim.App.2003) (holding, in prosecution for aggravated sexual assault, State-requested instruction on lesser included offense of sexual assault not warranted when the only evidence supporting proposition that no knife was used in alleged assault was State's failure to find the knife; thus, there was no evidence directly germane to lesser included offense for factfinder to consider).

Here, appellant claims there was no *affirmative* evidence that he was *unaware* of the risk his conduct created. *See id.* We disagree. Although it is true there was no declarative statement made during trial that appellant *did not know* his behavior was risky, there was circumstantial evidence from which a rational jury could infer appellant was unaware of the risk his conduct created.

First, there was testimony that appellant was driving faster than conditions warranted. Next, there was testimony appellant ignored signs that he was losing control of his rig. Finally, there was testimony appellant took his eyes off the road at the most critical stage of his bridge-crossing. In our view, this last piece of evidence circumstantially suggests appellant was unaware of the substantial risk associated with any failure to maintain lane integrity, because he averted his eyes from the narrow lanes to his mirrors at the moment when lane integrity was the most critical safety concern. Because evidence presented at trial indicated appellant was ordinarily a safety-conscious person who would have modified his behavior had he realized the danger of his actions, a jury could rationally infer appellant failed to perceive the risk.

■ Whether this evidence justified a lesser included offense charge is a function of whether (a) anything more than a scintilla of evidence either affirmatively refuted or negated an element of the greater offense (manslaughter), or (b) the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater offense. *Arevalo v. State*, 943 S.W.2d 887, 889 n. 5 (Tex.Crim.App.1997) (*Arevalo I*). Criminal negligence involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct. *Todd v. State*, 911 S.W.2d 807, 814 (Tex.App.-El Paso 1995, no pet.).

We conclude there was more than a scintilla of evidence from which a rational jury could infer that an ordinary or reasonably prudent person *ought to have been aware* that a substantial and unjustifiable risk of death is created when a person knows that a particular stretch of highway has led to multiple deaths, when he holds his speed above 60 miles per hour as he drives an eighteen-wheeler onto a bridge where, as a result of construction, the lanes narrow and provide no shoulder room.

We also conclude there was more than a scintilla of evidence from which the jury rationally could have inferred appellant, although familiar with the route he was driving and the bridge where the collision occurred, *failed to perceive that risk.* *See Thompson*, 676 S.W.2d at 176–77 (holding evidence sufficient to support finding of criminal negligence where defendant was

driving at high rate of speed, failed to slow down as she approached intersection and failed to watch traffic light). As stated earlier, evidence indicates appellant was traveling in excess of the speed limit, failed to slow down when others near him decreased their speed, failed to heed the commonly-accepted warning signs that he was losing control of his rig, and averted his eyes from the road to his mirrors, compromising his ability to maintain lane integrity. Tellingly, appellant testified he had "no clue" as to why his accident happened and that nothing put him "on notice" that something like this could happen.

In sum, we find the record contains more than a scintilla of evidence of appellant's failure to perceive the risk of death based on his conduct at the time of the incident. This evidence would permit a jury rationally to find that if appellant is guilty, he is guilty only of criminally negligent homicide.

Nevertheless on rehearing, appellant asserts that, consistent with *Arevalo II,* the evidence here does not justify the lesser included offense because it does not negate every alternate theory of liability for the greater offense. *See Arevalo v. State,* 970 S.W.2d 547, 549 (Tex.Crim.App.1998) (*Arevalo II* ). In *Arevalo II,* and in other cases stating that principle, the "alternate theories" were statutory theories elevating the offense from the lesser to the greater offense. *See Feldman v. State,* 71 S.W.3d 738, 752 n. 9 (Tex.Crim.App.2002) (explaining that in *Arevalo II* the State presented evidence on all three theories of aggravation, elevating sexual assault to aggravated sexual assault, and the second prong of the *Royster* test is satisfied only if credible evidence refutes or negates every theory which elevates the offense from the lesser to the greater). Here, the only element separating manslaughter from criminally

negligent homicide was the culpable mental state, *i.e.,* whether appellant was aware, or unaware, of the risk of death resulting from his conduct. The manslaughter indictment alleged acts supporting the charge, but they are not alternate theories that require elevation of the offense from criminal negligence to manslaughter. Instead, these acts, described in the indictment as "reckless," are subject to two different interpretations, one of which negates appellant's awareness of the risk of death resulting from his conduct. *See Arevalo I,* 943 S.W.2d at 889 n. 5. These acts, in combination with other evidence introduced at trial, allowed a rational jury to conclude appellant was unaware of the risk of death resulting from his conduct, thus negating the language in the indictment alleging appellant's conduct was reckless.

Accordingly, both prongs of the *Rousseau* test were satisfied, and the trial court did not err in submitting an instruction on the lesser included offense of criminally negligent homicide in the jury charge. We overrule appellant's point of error two.

## III. Refusal to Quash Indictment

In his third point of error, appellant asserts the trial court erred by refusing to quash appellant's indictment because the indictment did not allege acts or circumstances that demonstrated reckless conduct. We disagree.

### A. Standard of review

The decision to grant a motion to quash is discretionary, and so, is reviewed under an abuse of discretion standard. *See Thomas v. State,* 621 S.W.2d 158, 163 (Tex.Crim.App. [Panel Op.] 1981), *as limited by Geter v. State,* 779 S.W.2d 403 (Tex.Crim.App.1989); *Hankins v. State,* 85 S.W.3d 433, 436 (Tex.App.-Corpus Christi 2002, no pet.). A motion to

quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex.Crim.App.1988); *Crum v. State,* 946 S.W.2d 349, 359 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd). For an indictment to survive a timely motion to quash, the face of the indictment must contain allegations of the facts necessary to show that the offense was committed, bar subsequent prosecution for the same offense, and give the defendant notice of the precise offense with which he is charged. *Crum,* 946 S.W.2d at 359.

Upon review, we first determine if the notice given is sufficient. *Id.* If it is, our inquiry is ended; if not, the record must be examined to determine the impact of the deficiency on appellant's defense. *Id.; see also Hillin v. State,* 808 S.W.2d 486, 488–89 (Tex.Crim.App.1991) (concluding that, in order to prejudice the substantial rights of the defendant, such defect must be "to such a degree that the accusation fails to give adequate notice to the defendant so as to allow him to prepare a defense"; in other words, "the object of the requirement of notice ... is to secure the defendant's right to know the nature of the charges against him").

**B. Discussion**

 Generally, an indictment that tracks the words of a statute is legally sufficient. *Lewis v. State,* 659 S.W.2d 429, 431 · (Tex.Crim.App.1983); *Crum,* 946 S.W.2d at 360. However, when a statute provides more than one manner of committing a crime, the State must allege the particular statutory means of committing the offense. *See Ferguson v. State,* 622 S.W.2d 846, 851 (Tex.Crim.App. [Panel Op.] 1980) (finding defendant may not be left to guess whether State would seek to prove one or all types of defined conduct).

In addition, when "recklessness" or "criminal negligence" is an element of an offense, the State must allege the act or acts relied upon that constitute the reckless or criminally negligent conduct. Tex. Code Crim. Proc. Ann. art. 21.15 (Vernon 1989); *Gengnagel v. State,* 748 S.W.2d 227, 229–30 (Tex.Crim.App.1988); *Cruz v. State,* 838 S.W.2d 682, 684 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd); *Hankins,* 85 S.W.3d at 436. Indeed, it is never sufficient "to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence." Tex.Code Crim. Proc. Ann. art. 21.15; *Hankins,* 85 S.W.3d at 437 n. 4.

Here, the State's indictment[5] alleged appellant "did then and there unlawfully, recklessly cause the death of [complainant] by operating his motor vehicle, a deadly weapon, at an unreasonable speed, by failing to maintain a proper lookout for traffic and road conditions, by failing to maintain a single lane of traffic, and by changing lanes in an unsafe manner."

Such an indictment is proper. First, it put appellant on notice that the State was seeking a manslaughter conviction because it alleged appellant "recklessly cause[d] the death of [complainant]." *See* Tex. Pen. Code Ann. § 19.04(a); *See also DeVaughn,* 749 S.W.2d at 67 (charging instrument must convey adequate notice from which accused may prepare defense); *Crum,* 946 S.W.2d at 359 (motion to quash should be granted only when language concerning defendant's conduct is so vague and indefinite as to deny him adequate notice). Next, it alerted appellant to the acts upon which the State planned to rely to prove

---

5. Although appellant was indicted and charged in two separate cause numbers for having caused two separate deaths, the State proceeded to trial on only one of the charges.

appellant acted "recklessly"—namely, that appellant operated his vehicle at an unreasonable speed, failed to keep a proper lookout, failed to maintain a single lane of traffic, and changed lanes unsafely. *See* TEX.CODE CRIM. PROC. ANN. art. 21.15.

Because the State's indictment adequately informed appellant of the acts the State planned to rely upon to constitute "recklessness," we conclude the indictment was sufficient. *See Crume v. State,* 658 S.W.2d 607, 608–09 (Tex.Crim.App.1983) (indictment adequate where State alleged defendant "did ... recklessly caus[e] the death of the Complainant, by failing to guide his vehicle away ... and by failing to keep a lookout ..."); *Cruz,* 838 S.W.2d at 684 (indictment adequate where State alleged defendant "knowingly, intentionally and recklessly cause[d] bodily injury to [victim] by striking her with his body and causing her to fall ...") (emphasis deleted).[6]

■ The State was not required to plead evidentiary facts. *See Crum,* 946 S.W.2d at 359–60; *Cruz,* 838 S.W.2d at 684. Rather, it was only required to allege conduct a jury could rationally find to be reckless under the circumstances of this case. *See Cruz,* 838 S.W.2d at 684.

■ Appellant, however, asserts the conduct alleged by the State does not demonstrate recklessness; rather, it demonstrates "negligence and nothing more." We disagree for two reasons.

First, as stated earlier, the cases cited by appellant pertain to civil liability; thus, his argument is unpersuasive.[7] Second, it is not the purpose of the State's indictment to catalog State evidence and to *prove* recklessness; rather, it is to put appellant "on notice" that he is charged with recklessness and to specify the acts which the State will ask the trier of fact to use in

---

6. *See also Arredondo v. State,* 582 S.W.2d 457, 459 (Tex.Crim.App. [Panel Op.] 1979) (finding indictment adequate where State alleged defendant recklessly caused victim's death by "grabbing the steering wheel of a motor vehicle and pulling [it] to the right ... thereby recklessly ... causing ... vehicle to veer"); *Townsley v. State,* 538 S.W.2d 411, 412–13 (Tex.Crim.App.1976) (indictment adequate where State alleged defendant recklessly caused victim's death "by driving ... at an excessive rate of speed ... and recklessly causing said vehicle to run off the roadway"); *State v. Flores,* 878 S.W.2d 651, 652–53 (Tex. App.-Corpus Christi, 1994) (indictment adequate where State alleged defendant "recklessly cause[d] the death of an individual ... [by] driving and operating a motor vehicle ... into the rear end of a vehicle occupied by [victim]"), *aff'd* 896 S.W.2d 198 (Tex.Crim. App.1995); *State v. Emanuel,* 873 S.W.2d 108, 108, 110 (Tex.App.-Dallas 1994, no pet.) (indictment adequate where State alleged defendant "recklessly cause[d] bodily injury ... by striking ... complainant with a belt").

For authority on applying section 21.15 to the charge of "criminal negligence," see *Graham v. State,* 657 S.W.2d 99, 103–04 (Tex.

Crim.App.1983) (indictment adequate where State alleged defendant caused victim's death "by criminal negligence ... by operating a motor vehicle ... [by] causing his vehicle to collide ... by ... engaging in a contest of speed," as well as by failing to obey signal, keep a proper lookout, maintain control, and guide his vehicle away from victim); *Thompson v. State,* 676 S.W.2d 173, 177 (Tex.App.-Houston [14th Dist.] 1984, no pet.) (charging instrument adequate where State alleged defendant caused death of victim by criminal negligence by "operating her vehicle at a greater rate of speed than was reasonable and prudent ... and by failing to keep a proper lookout"); and *State v. Sonnier,* 773 S.W.2d 60, 61, 63 (Tex.App.-Houston [1st Dist.] 1989, no pet.) (charging instrument adequate where State alleged defendant "by criminal negligence cause[d] the death of an individual, ... by driving a motor vehicle ... at a greater speed than was reasonable and prudent under the existing conditions, to wit: a two lane roadway with an unimproved shoulder while approaching a curve and a railroad crossing ... causing the vehicle ... to run off the roadway").

7. *See supra* note 1.

inferring recklessness. *See* George E. Dix & Robert O. Dawson, 41 Tex.Crim. Prac. & Proc. § 20.171 at 627 (2001).

Although appellant relies heavily on *Gengnagel* to suggest his indictment should have been quashed, that case may be distinguished from the case at bar. In *Gengnagel*—where defendant was charged with indecent exposure—defendant's charging instrument tracked the Texas Penal Code for indecent exposure and alleged defendant had "expose[d] ... his genitals ... recklessly"; it was defective, however, because it did not specify *how* defendant's exposure was reckless. *See Gengnagel*, 748 S.W.2d at 229–30; Tex. Pen.Code Ann. § 21.08(a) (Vernon 1994).

Here, appellant's indictment also tracks the language of a Texas statute by alleging appellant "recklessly caused the death of [complainants]"; but, here, the State also has included the acts it planned to use to prove appellant's recklessness: *"by operating ... at an unreasonable speed, by failing to maintain a proper lookout ..., by failing to maintain a single lane ..., and by changing lanes in an unsafe manner."* (emphasis added). *See* Tex. Pen.Code Ann. § 19.04 (Vernon 1994).

Finding the State's indictment proper, we conclude the trial court did not err in refusing to grant appellant's motion to quash. Accordingly, we overrule appellant's third point of error.

Having overruled all of appellant's points of error, we affirm appellant's conviction for criminally negligent homicide.