Affirmed and Memorandum Opinion filed April 6, 2006









Affirmed
and Memorandum Opinion filed April 6, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00182-CR

____________

 

JOSE TYRONE MONTEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
Criminal District Court

Harris County, Texas

Trial Court Cause No. 983143

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Jose Tyrone Montez, was
convicted of capital murder and sentenced to life in prison.  Appellant contends he is entitled to a new
trial because (1) the trial judge overruled his objection to a co-conspirator
law of parties jury instruction, (2) the trial judge failed to apply this
instruction to the facts in the jury charge, (3) his request to charge the jury
on lesser-included offenses was denied, (4) the trial judge gave his own
definition of reasonable doubt during voir dire, and (5) he was denied
effective assistance of counsel.  We
affirm.








On April 2, 2004, appellant and two other
men, Alexander Gonzalez and Christopher Nicasio, approached Elder Chavez Romero
(the complainant) on the street. 
Appellant and his companions wore Abeanie@ caps or ski
masks.  Nicasio showed the complainant
his gun and said Agive me your keys,@ which Gonzalez
promptly grabbed.  Because none of the
three men knew how to drive a standard transmission, they forced the
complainant to teach Gonzalez how to drive the car while Nicasio held a gun on
him from the backseat.  At some point,
Gonzalez switched places with the complainant and began driving the car.  Gonzalez then said it was time to Aditch@ the complainant,
and that he knew of a place.  Appellant
told police he thought Ahe was just gonna= go walk him.@

Gonzalez parked near a bayou on a dead-end
street.  The bayou was overgrown with
weeds; appellant described it as a forest. 
Nicasio told the complainant Acome on let=s walk,@ and instructed
appellant to walk with them.  Appellant
said he followed Nicasio and the complainant down to the Abottom of the
ditch@ where Nicasio
told appellant to wait while he took the complainant Afurther on down
there to the woods.@ 
Appellant said he subsequently heard a gunshot, but did not know the
complainant had been murdered.  When he
and Nicasio got back to the car, Nicasio put his gun in the glove
compartment.  Appellant said that he did
not want to ask Nicasio what happened, but when Gonzalez asked, Nicasio replied
Ait=s taken care of.@

Appellant=s contention that
he was a passive observer to the murder was disputed by Mr. Shea Wear, who
lived on the street where the complainant was murdered.  Wear testified that he saw a car pull up and
stop on the side of the street.  Three
men got out of the car.  Two of the men
wore ski masks pulled low on their brows, and they flanked the third man who
was not wearing a ski mask.  They held
the third man Avery tight@ until they
disappeared from the witness= sight, down the
slope into the bayou.  Knowing something
was wrong, Wear called 9-1-1.  While he
was still on the telephone, Wear heard a gun shot.  He then saw two men run up from the bayou and
enter the car.  The police subsequently
discovered the complainant=s body in the area
where Wear had seen the men walk into the wooded bayou. 








Appellant and his companions were arrested
shortly after the murder.  The police
found two guns in the glove compartment of the stolen car, each loaded and
ready to fire with a bullet in the chamber. 
Appellant told the police that he never touched a gun, and that Nicasio
carried the two guns in his waistband. 
The police recovered two black ski masks and two gloves in the front
seat, and one black ski mask from the floorboard behind the driver=s seat.

At the close of appellant=s jury trial, the
State sought to include two party liability theories in the jury charge:  One under Texas Penal Code section 7.02(b) (party liability as a conspirator)[1] and th other
under section 7.02(a)(2) (party liability for directly aiding the offense).[2]  At an Aoff-the-record@ bench conference,
defense counsel apparently objected to the 7.02(b) instruction because the
trial judge later overruled this objection on the record.[3]  The trial judge also denied appellant=s request for a
charge on lesser-included offenses.








Section 7.02(b) Jury
Instruction

In his first and second points of
error, appellant contends the trial court committed reversible error (1) by
overruling his objection to a co-conspirator law of parties jury instruction
pursuant to Texas Penal Code section 7.02(b), and (2) by failing to apply the
abstract law of this instruction to the facts of the case.

Notwithstanding the requirement that an actor charged with
capital murder must have specifically intended to cause the death of another,
section 7.02(b) of the Penal Code provides that a party may still be criminally
responsible for the acts of another even though the party did not intend for
the act to occur as a result of his conduct. 
Wood v. State, 4 S.W.3d 85, 89 (Tex. App.CFort Worth 1999, pet. ref=d). 
Under section, 7.02(b), all the conspirators intending to commit one
felony may be convicted for any other felony actually committed in furtherance
of the intended felony if such felony was one that should have been anticipated
in the attempt to carry out the intended felony.  Tex.
Pen. Code Ann. ' 7.02(b).








Here, the testimony of a witness who observed the complainant
being forcibly escorted to the site of his subsequent murder, the presence of
three masks in the stolen vehicle, and portions of appellant=s confession certainly authorized
submission of a jury instruction regarding appellant=s guilt as a co-conspirator under
section 7.02(b).  However, a properly
constructed jury charge consists of a combination of abstract provisions and
application paragraphs.  Dinkins v. State,
894 S.W.2d 330, 339 (Tex. Crim. App. 1995). 
The abstract portion Aserve[s] as a kind
of glossary to help the jury understand the meaning of concepts and terms used
in the application paragraphs of the charge.@ Plata v. State,
926 S.W.2d 300, 302 (Tex. Crim. App. 1996), overruled on other grounds by
Malik v. State, 953 S.W.2d 234 (Tex. Crim. App. 1997).  The application paragraph applies the law to
the facts, and asks an ultimate question of the jury about whether the
defendant is guilty.  Id. at 302B03; Doyle v.
State, 631 S.W.2d 732, 736B37 (Tex. Crim.
App. 1982). Thus, the relationship between the two is that definitions (and
instructions) in the abstract portion are like words in a dictionary; their
true and correct meaning is not shown until they are properly used in a
sentence, i.e., in the application paragraph. Doyle, 631 S.W.2d at 737; Degrate
v. State, 86 S.W.3d 751, 752 (Tex. App.CWaco 2002, pet.
ref=d).

We find the trial court=s failure to apply the abstract
instruction to the facts of the case was error. 
See Campbell
v. State, 910 S.W.2d
475, 477 (Tex. Crim. App. 1995) (holding Ait is error for a trial judge to
refer to the law of parties in the abstract portion of the jury charge and not
to apply that law or to refer to that law in the application paragraph of the
jury charge@); see also Longoria v. State, 154
S.W.3d 747, 759B60 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (holding that Awhen a defendant
is tried under a vicarious criminal responsibility theory, the application
paragraph must either (1)specify all conditions that must be met for conviction
on that basis or (2) refer to instruction in the abstract portion pertaining to
criminal responsibility for another=s conduct@).  The review of jury charge error is a two-step process.  We first determine whether error occurred,
and then determine whether there is sufficient harm to warrant reversal.  Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Almanza v. State,
686 S.W.2d 157, 174 (Tex. Crim. App. 1984). 
If this error is timely objected to at trial, reversal is required if
there is Asome harm@ to the accused, namely, if the error
is not harmless.  Almanza, 686
S.W.2d at 171.  We will not reverse if
the jury charge error was not properly objected to unless the error  is fundamental.  In other words, we will reverse for charge
error even without an objection if the error was so egregious and created such
harm that the accused could not have had a fair and impartial trial.  Id. 
Whether the error was properly objected to or not, we determine the
actual degree of harm Ain light of the entire jury charge, the state of the
evidence, including the contested issues and weight of probative evidence, the
argument of counsel and any other relevant information revealed by the record
of the trial as a whole.@  Id. at 171.

Here,
our record contains no specific objection to the charge by appellant=s counsel, but immediately after an
unrecorded bench conference, the trial judge stated on the record:








.
. . the defendant objects to the 7.02(b) charge with regard to parties.  The Court, at the request of the State, is
including the 7.02(b) language. . . . 
The Court understands the reasons and the objection lodged by the
defendant.  It will be overruled on the
request of the State.  The 7.02(b)
language from the statute will be included in the Court=s charge. 

Thereafter, appellant=s counsel stated that he had no further requests or
objections to the jury charge.  The court
recessed, returned with the jury, and read the charge.  Although appellant apparently objected to the
7.02(b) charge and obtained a ruling, we do not know from the record on what ground
or grounds he objected.  At best, it
appears that appellant objected to the inclusion of a 7.02(b) instruction, but
nothing in the record suggests appellant objected to the trial court=s failure to apply
the abstract law to the facts of the case. 
Therefore, a reversal of the conviction is not warranted unless the
error is so egregious that appellant was denied a fair and impartial trial.

As we have already observed, a 7.02(b)
instruction on the law of parties was authorized by the evidence.  Thus, the trial court did not err in charging
the jury on the abstract provisions of 7.02(b). 
Moreover, abstract provisions of the charge were correctly stated by the
trial court.

Although the State=s attorney briefly
mentioned the foreseeablity of the murder, she exhorted the jury in closing
argument to find appellant guilty under a 7.02(a) parties theory.  The 7.02(a) instruction was properly applied
to the facts.

Finally, there is nothing in the record to
suggest that the jury utilized the abstract provisions regarding 7.02(b) in
reaching their verdict because (1) these provisions were not included in an
application paragraph and (2) there was sufficient evidence to support a
conviction under an alternate 7.02(a) theory which was included in an
application paragraph.  Moreover, even if
the jury relied on 7.02(b) in reaching its verdict, there is nothing in the
record to suggest the jury misapplied the abstract instruction to the facts of
the case.  The charge is neither
particularly difficult nor readily subject to misinterpretation.  Accordingly, we do not find the error
presented here was so egregious as to deny appellant a fair and impartial
trial.








Appellant=s first and second
points of error are overruled.

Lesser-Included Offenses

In his third point of error, appellant
argues the trial court erred by failing to provide an instruction on the
lesser-included offenses of felony murder, robbery, and kidnapping in the jury
charge.  To determine whether a jury
should be charged on a lesser-included offense, we must first decide whether
the crime is, in fact, a lesser-included offense of the offense charged.  Feldman v. State, 71 S.W.3d 738, 750
(Tex. Crim. App. 2002).  We then
determine whether some evidence exists from which a jury could rationally
acquit the defendant of the charged offense and convict him of the
lesser-included offense.  Id. at
750B51.  Anything more than a scintilla of evidence is
sufficient to entitle a defendant to a charge on the lesser-included offense or
offenses, regardless of whether that evidence is weak, impeached, or
contradicted.  Saunders v. State,
840 S.W.2d 390, 391 (Tex. Crim. App. 1992); Stadt v. State, 120 S.W.3d
428, 438 (Tex. App.CHouston [14th Dist.] 2003), aff=d 182 S.W.3d 360
(Tex. Crim. App. 2005).  The charge must
be given if evidence from any source indicates appellant is guilty only of the
lesser‑included offense, regardless of the strength or weakness of that
evidence.  Stadt, 120 S.W.3d at
438.

Appellant was indicted for capital murder
on grounds he intentionally caused the shooting death of Elder Chavez Romero
while in the course of committing and attempting to commit the kidnapping and
robbery of Elder Chavez Romero.  Tex. Pen. Code Ann. ' 19.02(b)(1)
(Vernon 2003).  Murder, kidnapping and
robbery are, necessarily, lesser-included offenses of the capital murder charge
against appellant.  Id. at ' 19.03(a)(2)
(Vernon Supp 2004B05). 
The first prong of the test has been met.  We must now determine whether there is some
evidence that appellant is not guilty of capital murder and guilty only of
murder, robbery, or kidnapping.








Appellant did not testify at his trial,
but argues that his statement to police provides some evidence that he never
intended the complainant=s death and, thus, he was entitled to a
jury instruction on the lesser-included offenses of felony murder, kidnapping,
and robbery.  However, appellant never
requested a charge on felony murder; rather, the record reveals he requested an
instruction on the lesser‑included offense of murder.  Accordingly, appellant has not preserved any
argument for the inclusion of a felony murder jury instruction.  Tex.
R. App. P. 33.1.

As for the lesser-included offense of
kidnapping, appellant denied any participation in the kidnapping.  Appellant told the police that he was merely
an observer, not a participant, in the kidnapping.  Having denied his participation in the
lesser-included offense of kidnapping, appellant presented no evidence that if
guilty, he was guilty only of the lesser-included offense of kidnapping.  See Eldred v. State, 578 S.W.2d 721,
723B24 (Tex. Crim.
App. [Panel Op.] 1979) (stating a defendant is not entitled to an instruction
on a lesser-included offense if the evidence indicates appellant was not guilty
of that offense). Just because a jury may choose to disbelieve appellant=s denial story
does not, of itself, create a right to a lesser‑included‑offense
charge.  Johnson v. State,  84 S.W.3d 726, 731 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d). 
Accordingly, appellant was not entitled to a lesser-included-offense
charge on kidnapping.








With respect to his request for a
lesser-included offense instruction on robbery, appellant did not deny his
participation in the robbery; rather, appellant denied to police that he
intentionally or knowingly abducted and murdered the complainant.  Thus, appellant essentially told police he
was an unwitting bystander from the time Gonzalez forced the complainant to
drive.[4]  However, the very statement appellant
contends shows him to be guilty only of robbery, actually shows him to be
guilty as a party to the offense of capital murder.  By his own admission, appellant willingly
participated in an aggravated robbery. 
He then accompanied his accomplices with an unwilling complainant to a
remote location for the express purpose of Aditching@ the
complainant.  Appellant admitted that he
then assisted Nicasio in escorting the complainant deep into a wooded area at
the point of a gun.  After the
complainant was murdered, appellant further admitted that he returned with  Nicasio to the stolen vehicle.  Moreover, he remained with his accomplices
until captured by the police.  Even if
appellant did not intentionally or knowingly kill the complainant, his
statement to the police shows him to have been an active conspirator in an
armed robbery under circumstances where it was foreseeable that the complainant
would be killed.  Thus, there is no
evidence in the record from which a rational fact finder could find that if
appellant were guilty, he was guilty only of the lesser-included offense of
robbery.  See Feldman, 71 S.W.3d
at 750B51.

Therefore, the trial court did not err in
denying appellant=s requested charge on the lesser-included
offense of robbery.  Appellant=s third point of
error is overruled.

Defining Reasonable Doubt During Voir Dire

In
his fourth point of error, appellant claims the trial judge committed
reversible error by giving his own definition of reasonable doubt during the
voir dire of prospective jurors.  During
voir dire, the trial judge defined reasonable doubt as follows:

[I]f
you go back in the jury room and you think the defendant is probably guilty,
that=s not good enough.  But if you go back in the jury room and you=re convinced in your heart and in
your mind, then that=s proof beyond a reasonable doubt.








Appellant did not object to this definition.  Therefore, he cannot complain of any error on
appeal.  See Fuentes v. State, 991
S.W.2d 267, 273 (Tex. Crim. App. 1999) (finding appellant waived complaint
about trial court=s explanation of reasonable doubt given to venire as belief
in one=s heart and conscience based upon an
evaluation of the evidence when appellant did not object).  Appellant=s fourth point of error is overruled.

Ineffective Assistance of Counsel

In his fifth point of error, appellant contends he was denied
effective assistance of counsel when his trial attorney failed to object to
victim impact testimony.  During the
guilt-innocence phase of trial, the State=s attorney called the victim=s cousin, Alex Castro, to
testify.  Mr. Castro testified to
background information, namely, the complainant was twenty-one years old when
he died; he moved to the United States to better himself; he had a degree in business
administration; he worked from twelve to fourteen hours a day as a tile setter
and sent money to his family in Honduras; he never smoked or drank; and, in his
free time, he stayed at home and watched cartoons.  Defense counsel did not object to this
testimony.  Appellant argues this Avictim impact evidence@ was irrelevant and severely
prejudicial to his case, and that his trial counsel=s failure to object rendered his performance
ineffective.








To prevail on a claim of ineffective
assistance of counsel, an appellant must show: 
(1) his attorney=s performance fell below an objective
standard of reasonableness, and (2) there is a reasonable probability the
result of the trial would have been different but for counsel=s deficient
performance.  Strickland v. Washington,
466 U.S. 668, 693B94 (1984); Mallett v. State, 65
S.W.3d 59, 62B63 (Tex. Crim. App. 2001).  A reasonable probability is one sufficient to
undermine confidence in the proceedings= outcome.  Strickland, 466 U.S. at 694; Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  This test shows whether counsel=s actions so
compromised the proper functioning of the process as to render the result
unreliable.  Mallett, 65 S.W.3d at
63.  Review of counsel=s performance is
highly deferential.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
There is a strong presumption counsel=s work fell within
a wide range of reasonable professional assistance.  Hernandez, 988 S.W.2d at 772.  Appellant must rebut this presumption by a
preponderance of the evidence showing what supported trial counsel=s actions or
inactions.  Id.  Any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).  An appellant=s claim of
ineffective assistance on a record silent as to trial counsel=s motivations will
generally fail, as the presumption that the attorney=s conduct was
reasonable has not been overcome.  Mallett,
65 S3 at 63; Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App.
1999); Jackson, 877 S.W.2d at 771.

We do not find counsel=s actions fell below an objective standard
of reasonableness.  The record is silent
as to why appellant=s counsel failed to object, and, therefore, is insufficient
to overcome the presumption that counsel=s actions were part of a strategic
plan.  See Tong v. State, 25
S.W.3d 707, 714 (Tex. Crim. App. 2000) (finding no ineffective assistance on
direct appeal when counsel failed to object to improper impact testimony of an
extraneous offense when record was silent as to counsel=s motivations).  Accordingly, appellant=s fifth point of error is overruled.

The trial court=s judgment is affirmed.

 

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 6, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Section
7.02(b) states:

If, in the
attempt to carry out a conspiracy to commit one felony, another felony is
committed by one of the conspirators, all conspirators are guilty of the felony
actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have
been anticipated as a result of the carrying out of the conspiracy.

Tex. Pen. Code
Ann. ' 7.02(b)
(Vernon 2003).





[2]  Section
7.02(a)(2) establishes party liability as follows:

A person
is criminally responsible for an offense committed by the conduct of another if
. . . acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.

Tex. Pen. Code
Ann. '
7.02(a)(2).





[3]  The nine-page charge instructed the
jury on the law of parties for both co-conspirator responsibility and for
directly aiding the commission of the offense. 
It then applied the law to the facts in four paragraphs.  The application paragraphs authorized the
jury to convict appellant of capital murder either as a primary actor or as a
party under Texas Penal Code 7.02(a)(2) as to both the kidnapping and robbery
offenses. 
There was no application paragraph for the 7.02(b) instruction.





[4]  See Tex. Pen.
Code Ann. ' 6.03(a) (Vernon 2003) (stating a person acts intentionally Awith respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.@); id. at ' 6.03(b) (holding a person acts knowingly Awith respect to a result of his conduct when he is
aware that his conduct is reasonably certain to cause the result.@); id. at ' 20.03(a) (Vernon 2003) (stating a person Acommits kidnapping if he intentionally or knowingly
abducts another person.@); id. at 
' 20.01(2) (Vernon Supp. 2004B05) (defining abduct 
to mean restraining a person with intent to prevent his liberation by
secreting or holding him in a place where he is not likely to be found, or using
or threatening to use deadly force); id. at ' 19.02(b)(1) (stating a person Acommits murder if he intentionally or knowingly causes
the death of an individual.@).