*692
 
 OPINION
 

 ANNE GARDNER, Justice.
 

 INTRODUCTION
 

 Appellant Bryan Jerome Moore appeals from his conviction by a jury for the offense of knowingly causing injury to a child. Appellant complains in three issues of appeal that the trial court committed error (1) when it allowed the use of a doll to demonstrate the offense over Appellant’s objection, (2) when it allowed into evidence a written statement from a purported learned treatise over Appellant’s objection, and (3) when it refused Appellant’s requested jury charge regarding the lesser included offense of negligently causing injury to a child. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Appellant was indicted for the offense of knowingly causing serious bodily injury to a child younger than 15 years of age, L.M., by shaking her, which caused her to suffer traumatic brain injury. The State further alleged that the use of Appellant’s hands in shaking L.M. constituted the use of a deadly weapon. Appellant pleaded not guilty to the charge and not true to the allegation of a use of a deadly weapon. At trial, Gregory Noone, a Hurst police detective, testified that he first interviewed Appellant at Cook Children’s Hospital regarding the circumstances of injuries to L.M., a six-month old baby. Appellant denied causing the injury or having any knowledge of how L.M. sustained injury. Detective Noone interviewed Appellant again at a later date, at which time Appellant admitted that he was responsible for causing L.M.’s injuries. At the interview, Detective Noone asked Appellant to demonstrate on a doll how he caused L.M.’s injuries. At trial Detective Noone reenacted the demonstration on a doll similar to that used by Appellant. Appellant objected to the use of the doll and was overruled. Detective Noone demonstrated how Appellant had shaken L.M. and described how the head “whiplashed back and forth several times.”
 

 Appellant testified that he watched L.M. on June 11th, while his wife, Linda, was at work. According to Appellant, he realized that L.M. had been sleeping all day and upon checking her noticed that she was limp and that her eyes were rolled back in her head. Appellant testified that he spent approximately thirty minutes to an hour trying to wake L.M. by “squeezing water on her face” and “patting her face.” L.M. still had not awakened when Linda returned home from work, at which time Linda immediately took L.M. to the hospital.
 

 Appellant admitted shaking L.M. on three or four occasions, but denied shaking her during June, the month L.M. was admitted to the hospital with her injuries. Over his objection, Appellant was also asked to demonstrate how he had shaken L.M. in the past. Appellant testified and demonstrated that, in an attempt to get L.M. to stop crying, he would bounce her on his knee. Appellant testified that when L.M. would not stop crying, the “motion” would become more intense, but he continued to only bounce L.M. on his knee. Appellant further testified that when bouncing L.M. on his knee, he supported her head and she never came off his leg. Appellant denied shaking the doll during his interview with Detective Noone as forcefully as Detective Noone had demonstrated. Appellant testified that the way he had demonstrated on the doll in the courtroom was the same way he had shaken the doll during his interview with Detective Noone.
 

 During the State’s cross-examination, the prosecutor took the doll from Appellant and shook the doll as Detective Noone had demonstrated. Appellant agreed that
 
 *693
 
 this demonstration by the State was how Detective Noone had shaken the doll. Appellant’s counsel did not object to the prosecutor’s shaking of the doll at that time. However, Appellant’s counsel did object to the use of the doll during the State’s closing argument. During closing, the State argued that “anyone knows if you shake a baby like this, like what Detective Noone showed you that Bryan Moore showed him on June 29th, what do you know is going to happen? You’re not doing that for the baby’s welfare.” Appellant renewed his objection to the use of the doll and was overruled.
 

 At trial Dr. Howard Kelfer, a child neurologist, testified that he had examined a CAT scan of L.M.’s brain taken upon L.M.’s admission to the hospital. Dr. Kel-fer testified that L.M. had received a “traumatic brain injury” and the trauma had probably occurred on several different occasions. Dr. Kelfer further testified that although L.M. was over two years old, she was unable to walk and her language skills were not developing. Additionally, Dr. Kelfer explained that L.M. suffered from “severe weakness on the right side of her body” and seizures, which were not able to be completely controlled by medication. Dr. Kelfer also testified that because of L.M.’s brain damage, she will be unable to attend school in a regular classroom setting. The jury found Appellant guilty of knowingly causing injury to a child and further found that Appellant used a deadly weapon, his hand, in the commission of the offense. The jury sentenced Appellant to forty years’ confinement.
 

 Play Doll Simulation
 

 In his first issue, Appellant complains that the trial court erred by allowing the State to use a play doll to demonstrate the offense because its probative value was substantially outweighed by the danger of unfair prejudice. Appellant complains that it was error for the trial court to allow the use of the doll for demonstration purposes during the State’s examinations of Detective Noone and Appellant and during the State’s closing argument.
 

 An appellate court reviews a trial court’s decision on whether to admit or exclude evidence under an abuse of discretion standard of review.
 
 Green v. State,
 
 934 S.W.2d 92, 101-02 (Tex.Crim.App.1996), ce
 
 rt. denied,
 
 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997);
 
 Montgomery v. State,
 
 810 S.W.2d 372, 391 (Tex.Crim.App.1990). A trial court’s determination on admissibility of evidence will not be disturbed unless there is a clear abuse of discretion.
 
 Werner v. State,
 
 711 S.W.2d 639, 643 (Tex.Crim.App.1986). The trial court’s ruling will be upheld as long as it is within the “zone of reasonable disagreement.”
 
 Montgomery,
 
 810 S.W.2d at 391.
 

 Under Rule 403 of the Texas Rules of Evidence, evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; by considerations of undue delay; or by needless presentation of cumulative evidence. Tex.R. Evid. 403. Rule 403 favors admissibility and presumes that relevant evidence will be more probative than prejudicial.
 
 Rayford v. State,
 
 125 S.W.3d 521, 529 (Tex.Crim.App.2003), ce
 
 rt. denied,
 
 — U.S. —, 125 S.Ct. 39, 160 L.Ed.2d 35 (2004).
 

 Appellant relies on
 
 United States v. Gaskell,
 
 985 F.2d 1056 (11th Cir.1993), to support his argument that the use of the doll to demonstrate how L.M. was shaken should have been excluded from evidence. In
 
 Gaskell,
 
 a prosecution expert demonstrated shaken baby syndrome on an infant mannequin and during the demonstration “forcefully shook the doll,” causing the head of the doll to swing
 
 *694
 
 back and forth.
 
 Id.
 
 at 1059. The expert testified that the neck of the doll used in the demonstration was stiffer than an infant’s; so greater force was necessary to cause the movement of the neck.
 
 Id.
 
 The
 
 Gaskell
 
 court stated that although a demonstration does not need to be identical to the original event, it “must be so nearly the same ... as to afford a fair comparison.”
 
 Id.
 
 at 1060. The court also noted that the offering party must lay a proper foundation showing the similarity between the demonstration and the event in question.
 
 Id.
 
 The
 
 Gaskell
 
 court held that the conditions of the demonstration were not sufficiently similar to the act in question because the doll’s neck was stiffer than an infant’s, thereby requiring more force to demonstrate shaken baby syndrome.
 
 Id.
 
 Since the demonstration was “substantially dissimilar” to the act in question, the probative value of the demonstration was outweighed by its prejudicial effects: “By displaying a greater degree of force than the level required to produce shaken baby syndrome in a seventh-month-old infant and by arbitrarily selecting a number of oscillations, the demonstration tended to implant a vision of Gaskell’s actions in the jurors’ minds that was not supported by any factual basis for the demonstration.”
 
 Id.
 
 at 1061.
 

 Although the present case also involves the use of a doll for demonstration purposes, it is distinguishable from
 
 Gaskell.
 
 In
 
 Gaskell,
 
 the court found that the doll itself was dissimilar to an infant in that the doll’s neck was stiffer, thus requiring more forceful shaking. 985 F.2d at 1060. This difference was noted by defense counsel when objecting to the demonstration.
 
 Id.
 
 In the present case, the demonstration did not purport to show how the infant, L.M., was shaken but, rather, to show how Appellant shook the doll in the interview with Detective Noone. There was no objection that the doll used during trial was dissimilar to the doll used by Appellant when he previously showed how he had shaken L.M. Moreover, the State, in handing the doll to Detective Noone during trial, specifically asked him whether the doll used in court was similar to the doll used during his interview with Appellant, and he replied that it was similar. Therefore, the similarity between the use of the doll during the interview and the demonstration with the doll during trial meets
 
 Gaskell’s
 
 requirement that the conditions must be similar enough to provide a fair comparison.
 

 Additionally, in
 
 Gaskell,
 
 the expert testified that his demonstration of shaken baby syndrome was based on the demonstration of a police officer in an unrelated case. 985 F.2d at 1060. The court found that the expert’s demonstration was not supported by any facts because neither the “degree of force [nor] the number of oscillations bore any relationship to the defendant’s actions.”
 
 Id.
 
 at 1061. In contrast, Detective Noone’s demonstration in this case was based on his own interview with Appellant. During this interview, Appellant used a similar doll to demonstrate to Detective Noone how he had shaken L.M. in the past. Detective Noone’s demonstration was based on this firsthand knowledge as an eyewitness gained during his interview with Appellant. The demonstration in court therefore was based on facts that did bear a substantial relationship to defendant’s actions. We hold that the trial court did not abuse its discretion in allowing the use of the doll by Detective Noone.
 

 Likewise, the trial court did not abuse its discretion in allowing the Appellant to use the doll during the State’s cross-examination. Appellant demonstrated that he had bounced L.M. on his knee in the past in an attempt to calm her down. Appellant testified that when he could not get L.M. to stop crying, he became frus
 
 *695
 
 trated and angry. Appellant stated that “the motion starts to reflect the anger or whatever that-that I’m feeling, the frustration that I’m feeling. So I’m saying, hey, come on, be quiet, come on. So like it gets progressively a bit more intense.” Based on Appellant’s testimony, the foundation was laid that his demonstration with the doll in the courtroom did bear a “similarity of circumstances and conditions” to his actions with L.M.
 
 Gaskell,
 
 985 F.2d at 1060. Since Appellant testified that he would grow frustrated and angry and that his “motion” with L.M. would grow more intense, it was appropriate to request that he demonstrate on a doll how he would react in these situations. It also afforded Appellant the opportunity to dispute the earlier demonstration by Detective Noone and to present to the jury his version of how he handled L.M. As Appellant was testifying as to his own conduct, his demonstration on the doll in the courtroom did afford a fair comparison to the act in question.
 
 See Gaskell,
 
 985 F.2d at 1060 (“Although the conditions of the demonstration need not be identical to the event at issue, ‘they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.’ ” (quoting
 
 Ill. Cent. Gulf R.R. Co. v. Ishee,
 
 317 So.2d 923, 926 (Miss.1975))). We hold that the trial court did not abuse its discretion in allowing the use of the doll by Appellant.
 

 Additionally, the trial court did not err in overruling Appellant’s objection to the use of the doll during the State’s closing argument. During closing argument, the State is permitted to summarize the evidence.
 
 See Cannon v. State,
 
 668 S.W.2d 401, 404 (Tex.Crim.App.1984) (discussing the four permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement). Because the evidence presented at trial included witnesses’ demonstrations with the doll, the State’s use of the doll in its closing argument to summarize the evidence was proper.
 
 See Vera v. State,
 
 709 S.W.2d 681, 687 (Tex.App.-San Antonio 1986, pet. ref'd) (allowing prosecutor to use doll during closing argument in sexual assault case). The trial court did not abuse its discretion in allowing use of the doll during State’s closing argument.
 

 Having found that the use of the doll was relevant to Appellant’s actions, we must now determine whether the probative value is substantially outweighed by the danger of unfair prejudice. A presumption of admissibility applies to all relevant evidence, and a trial judge may exclude such evidence only when there is a “clear disparity between the degree of prejudice of the offered evidence and its probative value.”
 
 Mozon v. State,
 
 991 S.W.2d 841, 847 (Tex.Crim.App.1999). “Unfair prejudice does not, of course, mean that the evidence injures the opponent’s case — the central point of offering evidence. Rather it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.”
 
 Cohn v. State,
 
 849 S.W.2d 817, 820 (Tex.Crim.App.1993).
 

 The use of the doll during trial clearly related to Appellant’s actions as demonstrated through Appellant’s own testimony and the testimony of Detective Noone, based on firsthand knowledge gained during his interview with Appellant. Likewise, the doll used at trial was shown to be similar to the doll used during Detective Noone’s interview. As such, we cannot say that the probative value of the use of the doll was substantially outweighed by the danger of unfair prejudice. Therefore, the trial court’s ruling was not an abuse of discretion.
 

 Appellant’s first issue is overruled.
 

 
 *696
 
 Hearsay
 

 Appellant complains in his second issue that the trial court erred in admitting into evidence a hearsay statement contained in a writing offered as a learned treatise. Appellant objected to the State’s introduction of a “policy statement”' from the American Academy of Pediatrics during direct examination of one of its expert witnesses, Dr. Howard Kelfer. Appellant argues that the “policy statement” was inadmissible hearsay.
 

 Although Appellant objected to the admission of the written statement during the testimony of Dr. Kelfer, he failed to object when the statement was called to the attention of a subsequent witness. The State again presented the “policy statement” in the following exchange with witness Dr. Dave Donahue, an expert in pediatric neurosurgery:
 

 Q. Are you familiar with the American Academy of Pediatries and their policy statement with regard to shaken-baby syndrome?
 

 A. Yes, sir.
 

 Q. Are you aware with respect to the fact that they say this is a violent act? Would you agree with that?
 

 A. Yes, sir.
 

 Q. Would you also agree with their statement or their position that anybody observing this type of violence or act would immediately recognize it as dangerous and likely to Mil the child?
 

 A. Unless they came from outer space.
 

 Appellant did not object to the use of the “policy statement” in Dr. Donahue’s testimony. To preserve error, a party must continue to object each time the objectionable evidence is offered.
 
 Fuentes v. State,
 
 991 S.W.2d 267, 273 (Tex.Crim.App.), ce
 
 rt. denied,
 
 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999);
 
 Ethington v. State,
 
 819 S.W.2d 854, 858-59 (Tex.Crim.App.1991). A trial court’s erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.
 
 Leday v. State,
 
 983 S.W.2d 713, 718 (Tex.Crim.App.1998);
 
 Johnson v. State,
 
 803 S.W.2d 272, 291 (Tex.Crim.App.1990),
 
 cert. denied,
 
 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991),
 
 overruled on other grounds by Heitman v. State,
 
 815 S.W.2d 681 (Tex.Crim.App.1991). This rule applies whether the other evidence was introduced by the defendant or the State.
 
 Leday,
 
 983 S.W.2d at 718.
 

 Accordingly, Appellant’s failure to object to the questioning of Dr. Donahue regarding the American Academy of Pediatrics statement waived any error in the admission of the statement during the testimony of Dr. Kelfer. Appellant’s second issue is overruled.
 

 Jury Charge
 

 Appellant complains in his third issue that the trial court erred in refusing to charge the jury on the lesser included offense of criminal negligence. The trial court’s charge instructed the jury to find Appellant guilty if they found beyond a reasonable doubt that he “knowingly” caused serious bodily injury to L.M. The charge also instructed that if the jury did not find that Appellant “knowingly” caused serious bodily injury, they should acquit of that offense and “next consider whether he is guilty of the offense of recklessly causing injury to a child.” Therefore, Appellant received a lesser included offense instruction on recklessness, but did not receive his requested instruction on criminal negligence. The jury found Appellant guilty of knowingly causing injury to a child.
 

 To determine whether a jury must be .charged on a lesser included offense, we apply a two-step analysis.
 
 Moore v. State,
 
 
 *697
 
 969 S.W.2d 4, 8 (Tex.Crim.App.1998). The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure. Tex.Code Ckim. PROC. Ann. art. 37.09 (Vernon 1981);
 
 Moore,
 
 969 S.W.2d at 8. “An offense is a lesser included offense if ... it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission.” Tex.Code Ceim. PROC. Ann. art. 37.09(3). Appellant was indicted for the offense of knowingly causing serious bodily injury to a child. A person commits injury to a child “if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child ... serious bodily injury.” Tex. Penal Code Ann. § 22.04(a)(1) (Vernon 2003). Because the offense encompasses all culpable mental states, criminally negligent infliction of serious bodily injury is a lesser included offense of knowing infliction of serious bodily injury. Therefore, the first step of our analysis is satisfied.
 

 The second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater.
 
 Feldman v. State,
 
 71 S.W.3d 738, 750 (Tex.Crim.App.2002);
 
 Moore,
 
 969 S.W.2d at 8. The evidence must be evaluated in the context of the entire record.
 
 Moore,
 
 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the defendant on the greater offense while convicting him of the lesser included offense.
 
 Id.
 
 The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.
 
 Id.
 
 If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.
 
 Schweinle v. State,
 
 915 S.W.2d 17, 19 (Tex.Crim.App.1996);
 
 Saunders v. State,
 
 840 S.W.2d 390, 391-92 (Tex.Crim.App.1992).
 

 The Texas Penal Code defines “knowingly” as follows:
 

 A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
 

 Tex. Penal Code Ann. § 6.03(b) (Vernon 2003).
 

 The Penal Code defines “recklessly” as follows:
 

 A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor’s standpoint.
 

 Id.
 
 § 6.03(c).
 

 The Penal Code defines “criminal negligence” as follows:
 

 A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree
 
 *698
 
 that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor’s standpoint.
 

 Id.
 
 § 6.03(d).
 

 Injury to a child is a result oriented crime, requiring a culpable mental state that relates to the result of the conduct.
 
 Banks v. State,
 
 819 S.W.2d 676, 678 (Tex.App.-San Antonio 1991, pet. refd). The jury charge in the present case properly focused on the result of the alleged conduct. Therefore, in order to find Appellant guilty of knowingly causing serious bodily injury, the jury had to find that he was aware that his conduct was reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b). In order to find Appellant guilty of recklessly causing serious bodily injury, the jury would likewise have had to find that Appellant was aware of, but that he consciously disregarded, a substantial and unjustifiable risk that the result would occur.
 
 Id.
 
 § 6.03(c). In order to be entitled to the requested jury instruction, we must determine whether there is some evidence that would permit a rational jury to find that Appellant is guilty of only criminally negligent injury to a child.
 
 Moore,
 
 969 S.W.2d at 8. The key to criminal negligence is the failure of the actor to perceive the risk.
 
 Lewis v. State,
 
 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Therefore, in order to receive a jury charge on criminal negligence, there must be some evidence in the record that the Appellant was
 
 unaware
 
 of the risk of his conduct.
 
 Mendieta v. State,
 
 706 S.W.2d 651, 653 (Tex.Crim.App.1986);
 
 Cooks v. State,
 
 5 S.W.3d 292, 297 (Tex.App.-Houston [14th Dist.] 1999, no pet.).
 

 Proof of a culpable mental state generally relies upon circumstantial evidence.
 
 Stadt v. State,
 
 120 S.W.3d 428, 438 (Tex.App.-Houston [14th Dist.] 2003, pet. granted). Ordinarily, it must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances.
 
 Id.
 
 The issue of whether one is aware of the risk or simply fails to perceive it is a conclusion to be drawn through inference from all the circumstances by the trier of fact.
 
 Id.
 
 Appellant refers us to two pieces of testimony as arguably raising some evidence that he was unaware of the risk of his conduct. First, Appellant points to the cross-examination of Detective Noone, who was asked to explain the mental states of reckless and negligence:
 

 Q. And reckless — understanding you deal with the Penal Code every day, so you understand that some of the different states of minds or mens rea involved in crimes, correct?
 

 A. Yes.
 

 Q. And reckless is a substantial, unjustified — I can’t think of the word I want to use right now — yeah, a disregarding of the substantial and unjustifiable risk, correct?
 

 A. Basically should have known.
 

 Q. Should have known. Should have known. And that’s negligence, though, should have known. There’s a standard of negligence and, hey, a reasonable person does this and you should have known to do that, correct?
 

 A. Uh-huh.
 

 Q. And then — is that correct?
 

 A. I’m sorry.
 

 Q. Negligence is a should have known. It’s a reasonable person standard?
 

 A. Well, negligence is saying that a reasonable person would have — wouldn’t have put these things into play.
 

 Q. And the, of course, the next thing is reckless, which is how you filed this case, correct?
 

 A. Uh-huh.
 

 
 *699
 
 Q. And under those circumstances, it’s a disregard of substantial and unjustifiable risk, correct?
 

 A. I’d have to, again, look at the—
 

 Q. A gross deviation—
 

 A. —the language on that.
 

 Q. A gross deviation from the standard of care, correct?
 

 A. I’ll agree with that pending a review back on the Penal Code definitions.
 

 Appellant argues that this exchange provides some evidence that Appellant was only negligent because, as he argues, that is what Detective Noone concluded after his initial investigation. We do not agree. Detective Noone was asked to clarify a legal definition, which unfortunately, lacked clarity. He did not testify that he thought Appellant was negligent, as Appellant argues. Further, Detective Noone, after conducting an initial investigation, prepared an offense report listing the offense as a “reckless crime.” However, the grand jury indicted Appellant for knowingly causing serious bodily injury to a child. Therefore, we do not see how this brief exchange regarding the definitions of reckless and negligence constitutes “some evidence directly germane to a lesser-included offense.”
 
 Hampton v. State,
 
 109 S.W.3d 437, 441 (Tex.Crim.App.2003).
 

 Second, Appellant points to his testimony that when he shook L.M. he was not “consciously aware” of anything, except trying to stop her from crying. However, Appellant testified on cross-examination:
 

 Q. All right. Now, with respect to June, the reason that you’re so certain that you didn’t shake [L.M.] in June of 2001 is because you knew you had a temper and you knew you were short with [L.M.]; isn’t that true?
 

 A. I didn’t want to have any more frustrated episodes.
 

 Q. Right. You didn’t want to shake her again, right?
 

 A. I didn’t want to hurt my child.
 

 Q. Okay. And you knew that by shaking her you could hurt her, right?
 

 A. I knew that if I continued to handle my child when I was frustrated or angry, that ultimately it could lead to some kind of injury, which is why I ceased to care for her.
 

 Appellant further testified on cross-examination:
 

 Q. You were afraid you were going to hurt her and so that’s why you wanted Linda Gray [L.M.’s grandmother] to continue to care for that child; isn’t that right? Yes or no, sir?
 

 A. That’s correct.
 

 Appellant also provided a written statement to Detective Noone, which was admitted into evidence and read to the jury by the detective. In the statement, Appellant states that “[o]n four occasions from the time [L.M.] was three months old until her present age, I lost my temper and shook her too hard.” The statement continues, “I do not ever want to harm my child or anyone else ever again.”
 

 Dr. Donahue also gave his opinion that anyone would immediately recognize the act of shaking a baby as dangerous, “[u]n-less they came from outer space.” Further, the State asked Appellant if he saw a baby being shook in the manner demonstrated by Detective Noone, would he “recognize that act as being [an] act that could seriously injury (sic) or kill a child at that age,” to which Appellant replied yes.
 

 This evidence leads us to the conclusion that not only did Appellant believe his treatment of L.M. was wrong, but if he continued, the result of his conduct would lead to her injury. Appellant admitted shaking L.M. in the past because he wanted to stop her from crying. He also testified that he ceased to be her primary caretaker because he feared she would suffer injury if he experienced another
 
 *700
 
 “frustrated episode.” Therefore, whether Appellant was “not consciously aware” of anything except trying to stop L.M. from crying when he began to shake her, he must have become aware of a risk of injury before he stopped shaking her. His thought process with regard to what the risk of the result could be is more relevant than what his immediate intent was regarding the shaking.
 
 See Schroeder v. State,
 
 123 S.W.3d 398, 400 (Tex.Crim.App.2003) (“result of conduct” offense means that the culpable mental state relates to the cause of the result);
 
 Still v. State,
 
 709 S.W.2d 658, 661 (Tex.Crim.App.1986) (evidence showed that defendant, after perceiving the risk in pointing a loaded gun at his wife, continued to point the gun at her even while he attempted to uncock it);
 
 Cooks,
 
 5 S.W.3d at 296-97 (finding no evidence that defendant charged with manslaughter was not aware of the risk; instead evidence that defendant was a licensed driver, drove almost one hundred miles per hour in a fifty-five mile per hour zone, car with which he collided split in half, and reconstruction experts estimated that he was still going seventy miles per hour after the collision only showed a conscious disregard of the risk);
 
 Bergeron v. State,
 
 981 S.W.2d 748, 752-53 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (finding defendant’s explanation that he was trying to ward off victim with knife but stabbed him in the process did not indicate that he failed to perceive the risk that the victim might be seriously injured or killed).
 

 Based on this evidence, we conclude that no rational jury could find that if Appellant was guilty, he was guilty only of the lesser included offense. It was therefore not error for the trial court to refuse to include the lesser included offense. Appellant’s third issue is overruled.
 

 CONCLUSION
 

 Having overruled all Appellant’s issues, we affirm the trial court’s judgment.