

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00019-CR

---

JAMES RICHARD HOOVER                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY
### TRIAL COURT NO. CR17997

----------

## MEMORANDUM OPINION[1]

----------

Appellant James Richard Hoover appeals from his conviction for driving while intoxicated (DWI).  We affirm.

## I. BACKGROUND

On June 12, 2014, at "around 11:57 a.m. to 12:04," Rhome Police Officer Chance Garrett heard a broadcast that "a suspicious person" had urinated in a

---

[1]*See* Tex. R. App. P. 47.4.

residential front yard and then had driven off in a truck toward the service road of a highway. Shortly thereafter, at approximately 12:04 p.m., Garrett saw a black truck pull up to a stop sign near that service road and turn left after failing to properly signal the turn. Garrett signaled for the truck to pull over, and the driver stopped partially in the intersection. When Garrett approached the truck, he noticed that the driver, whom Garrett identified as Appellant, smelled of alcohol. Garrett had Appellant get into his patrol car and then called the Department of Public Safety for assistance.

When the two troopers—William Aaron Wallace (W. Wallace) and Ralph Ray Wallace (R. Wallace)—arrived, W. Wallace asked Appellant to get out of Garrett's patrol car. He noticed that Appellant "walked out diagonally and stepping across his feet, almost a staggering motion." Appellant's clothes were "disorganized" and he appeared "tired and kind of sluggish." W. Wallace, like Garrett, noticed a strong odor of alcohol on Appellant's breath. Appellant admitted that "he was in trouble for urinating in someone's yard" and that he had drunk three beers both at home and in his truck. Appellant stated that he regularly drank alcohol "pretty much every day" and that he had not eaten anything that day although he had been awake since 2:00 a.m.

When asked, Appellant consented to field-sobriety testing. Appellant failed the horizontal-gaze-nystagmus test, exhibiting six out of six clues of intoxication, and the walk-and-turn test, exhibiting three out of eight clues of intoxication. Appellant told W. Wallace that he could not perform the third test—the one-leg

2

stand. After concluding that Appellant had "lost his normal use of mental and physical faculties" through the ingestion of alcohol, W. Wallace arrested Appellant for DWI. R. Wallace then recited the required DIC-24 warnings to Appellant at 1:15 p.m.[2] Appellant consented to have his blood drawn. The test revealed that at the time Appellant's blood was drawn—1:44 p.m.—Appellant had a blood-alcohol concentration (BAC) of 0.114, which was over the legal limit of 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

A grand jury indicted Appellant with felony DWI based on his two prior convictions for misdemeanor DWI. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(b) (West Supp. 2016). At trial, Mary Avalos Belli, the forensic scientist who had analyzed Appellant's blood sample, testified that at the time Garrett stopped Appellant, Appellant's BAC would have been 0.15 or 0.17 based on retrograde extrapolation. The jury found Appellant guilty of felony DWI and assessed his punishment at five years' confinement and a $10,000 fine. The trial court sentenced Appellant accordingly, and Appellant was released on an appeal bond. *See* Tex. Code Crim. Proc. Ann. art. 44.04(b) (West Supp. 2016).

## II. EXPERT TESTIMONY

Appellant argues in his first point that the trial court abused its discretion by allowing Belli to give her opinion based on retrograde extrapolation because it was unreliable. *See* Tex. R. Evid. 702–03. To show reliability, the proponent of

---

[2]*See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2016); *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

3

scientific evidence must show by clear and convincing evidence that (1) the underlying theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Appellant specifically attacks the technique Belli used to conduct a retrograde extrapolation—she did not understand the "BAC curve"—and Belli's application of retrograde extrapolation to Appellant based on assumed facts. He does not argue that retrograde extrapolation is invalid as a theory.

We review a trial court's decision to admit scientific evidence for an abuse of discretion. *See Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). For the reasons stated below, we cannot so conclude and overrule Appellant's first point.

### A. BELLI'S TESTIMONY

During Belli's testimony, she defined retrograde extrapolation as "a calculation where you want to find out what the [BAC] was at a certain time in the past." She explained that this calculation is based on the knowledge that a body absorbs alcohol, the BAC peaks, and then the body begins to eliminate the alcohol—the BAC curve referred to by Appellant.[3] She recognized that there was

---

[3]This curve is also explained in the context of an absorption phase and an elimination phase: "So if a driver is tested while in the absorption phase, his BAC

4

"some" controversy in the scientific community regarding retrograde extrapolation but stated that it was "accepted . . . as long as . . . [the determinative] factors are known" by the expert. Belli testified that she understood the factors that are to be considered in performing retrograde extrapolation: age, body size, amount of alcohol consumed, and when alcohol was last consumed. She stated that the presence of food in the stomach will slow the absorption rate and that a chronic drinker will eliminate alcohol faster than a nondrinker. Belli also admitted that she would need to know the time of Appellant's last drink to determine what his BAC was at the time of the stop based on retrograde extrapolation.

The State then had Belli assume that a person's third drink[4] occurred "sometime between 11:57 and 12:04," that the person was over six feet tall and weighed 160 pounds, that the person had not eaten in ten hours, and that the person's BAC one hour and forty minutes after the stop was 0.114. Belli applied retrograde extrapolation to those facts and concluded that at the time of the stop, the person would have had a BAC of 0.15 if the person was not a regular drinker or 0.17 if the person was a regular drinker, with an error rate of plus or minus .01.

---

at the time of the test will be higher than his BAC while driving. If tested while in the elimination phase, his BAC at the time of the test could be lower than while driving, depending on whether he had reached his peak before or after he was stopped." *Mata v. State*, 46 S.W.3d 902, 909 (Tex. Crim. App. 2001).

[4]Belli assumed "an average drink, which is a 12-ounce beer at 4 percent . . . ethanol."

5

In short, Belli testified that based on the facts given to her, Appellant's BAC was higher at the time of the stop than at the time of the blood test.

## B. TECHNIQUE APPLYING RETROGRADE EXTRAPOLATION

Appellant objected to Belli's testimony on the basis that Belli did not have sufficient information to apply retrograde extrapolation to Appellant. The trial court overruled Appellant's objection. On appeal, Appellant again asserts that Belli's opinion was unreliable because she opined that Appellant was in the elimination phase at the time he was driving, not at the time of the blood test, which showed she did not understand retrograde extrapolation.

In determining the reliability of retrograde-extrapolation evidence, courts are to consider and balance: "(a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation." *Mata*, 46 S.W.3d at 916–17. In general, an expert must be able to apply retrograde extrapolation with consistency and clarity and must show a knowledge of the "difficulties," "subtleties," and "risks" inherent in the science. *Id.* at 916.

Belli understood the application of retrograde extrapolation and was able to clearly and consistently testify to its application to Appellant. Belli was aware of the BAC curve and explained its application to Appellant based on several facts surrounding the offense and on Appellant's physical characteristics. These facts

6

included Appellant's height and weight, his history with and tolerance of alcohol, his admission that he consumed three beers at home and in his truck before he was stopped, the fact that he had not eaten anything that day, and the fact that the blood test occurred one hour and forty minutes after the stop. Belli also understood the difficulties associated with retrograde extrapolation and recognized that there was "some" controversy within the scientific community regarding the theory if the factors Belli considered in Appellant's case were unknown. Although Belli stated once that she assumed Appellant was in the elimination phase "at the time of the stop," Belli also explained that "if you have no food in your stomach, it could take anywhere between 20 to 45 minutes to fully absorb that alcohol and then begin eliminating." Viewing Belli's testimony as a whole, Belli's technique was sufficiently reliable such that we cannot conclude that the trial court abused its discretion in admitting it.[5] *See, e.g.*, *Bignon v. State*, 252 S.W.3d 360, 367–68 (Tex. Crim. App. 2008); *Subirias v. State*, 278 S.W.3d 406, 410–13 (Tex. App.—San Antonio 2008, pet. ref'd); *Kennedy v. State*, 264 S.W.3d 372, 377–79 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Washburn v. State*, No. 04-99-00927-CR, 2002 WL 31015255, at *2 (Tex. App.—

---

[5]Even if Belli's retrograde-extrapolation testimony did not sufficiently prove Appellant's BAC at the time he was driving based on the absorption or elimination phases, the jury was not required to establish his exact BAC at the time he drove. *See Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). As the jury charge reflected, the jury only needed to find that Appellant was intoxicated based on his BAC or based on the loss of the normal use of his mental or physical faculties. *See id.* Appellant does not challenge the testimony regarding the loss of his normal faculties.

San Antonio Sept. 11, 2002, no pet.) (mem. op. on remand, not designated for publication); *cf. Mata*, 46 S.W.3d at 917 (finding retrograde extrapolation unreliable because only one blood test given more than two hours after offense occurred and expert knew no personal characteristics of defendant); *Veliz v. State*, 474 S.W.3d 354, 360–62 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding expert's retrograde-extrapolation testimony unreliable because blood was drawn three and a half hours after arrest, expert did not know many of appellant's characteristics, expert believed retrograde extrapolation could be based on knowing only the time of the stop and the time of the blood test, and expert could not explain her calculation with clarity).

### C.  PROPER APPLICATION OF RETROGRADE EXTRAPOLATION

Appellant also argues that Belli's testimony was unreliable because although there was no evidence of the time Appellant had his last drink, Belli relied on the State's hypothetical and assumed his last drink occurred between 11:57 a.m. and 12:04 p.m.  The use of hypotheticals when examining expert witnesses is an accepted practice, and the facts included in a hypothetical may be facts admitted into evidence or facts assumed by counsel in accordance with the theory of the case.  *Matson v. State*, 819 S.W.2d 839, 853 (Tex. Crim. App. 1991).  Although there is no evidence establishing the time of Appellant's last drink with precision (and as the State points out, could not be established with unassailable accuracy absent Appellant's cooperation), this assumed fact does not contradict the evidence introduced at trial and fits with the State's theory of

8

the case. *See Hearrean v. State*, No. 08-13-00338-CR, 2016 WL 3021627, at *8–9 (Tex. App.—El Paso May 25, 2016, pet. ref'd) (mem. op., not designated for publication); *Subirias*, 278 S.W.3d at 412–13. The State's hypothetical assumed that Appellant's last drink was immediately before he was stopped—between 11:57 a.m. and 12:04 p.m.—which was supported by Appellant's admission that he had been drinking in his truck as well as at home. Belli's application of retrograde extrapolation to Appellant, even though based on an assumed fact, was sufficiently reliable such that we cannot conclude that the trial court abused its discretion by admitting it. *See Bigon*, 252 S.W.3d at 367 ("[T]he trial court does not abuse its discretion by allowing an expert to base testimony upon an assumption if there is a factual basis for the assumption in the record.").

### III. DENIAL OF MISTRIAL

In his second point, Appellant contends that the trial court erred by failing to grant a mistrial after W. Wallace testified that Appellant's failure of the horizontal-gaze-nystagmus test correlated to a BAC of more than 0.08. At trial, W. Wallace explained the mechanics of a horizontal-gaze-nystagmus test and testified that if at least four clues of six are present, he would decide another test was needed. W. Wallace then stated that a person exhibiting four out of six clues on the horizontal-gaze-nystagmus test would "indicate[] that the person is most likely over the legal limit of 0.08."[6] The trial court sustained Appellant's

---

[6]The State concedes that this testimony was improper.

9

objection to this statement and instructed the jury to disregard it. But the trial court denied Appellant's motion for a mistrial.

We review that denial for an abuse of discretion. *See Terry v. State*, No. 2-07-010-CR, 2008 WL 1777863, at *1 (Tex. App.—Fort Worth Apr. 17, 2008, no pet.) (mem. op., not designated for publication); *cf. Thomas v. State*, 461 S.W.3d 305, 310 (Tex. App.—Fort Worth 2015, no pet.) (applying same standard to denial of mistrial after State's improper jury argument). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). When a trial court instructs a jury to disregard improper evidence, we presume that the jury followed that instruction absent evidence that it failed to do so. *See Terry*, 2008 WL 1777863, at *1–2; *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App.), *cert. denied*, 484 U.S. 905 (1987). There is no indication in the record, and Appellant points to none, that the jury considered W. Wallace's testimony that the failure of one field-sobriety test equated to a BAC above the legal limit. Indeed, Appellant's prompt objection and the trial court's instruction conveyed the message to the jury that this statement could not be considered. *See Rojas v. State*, 986 S.W.2d 241, 250–51 (Tex. Crim. App. 1998); *see also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer . . . ."). This case does not present an extreme

10

circumstance justifying a conclusion that the trial court abused its discretion by denying Appellant's motion for mistrial. *See, e.g.*, *Hudson v. State*, No. 2-04-030-CR, 2005 WL 1244663, at *3–4 (Tex. App.—Fort Worth May 26, 2005, pet. ref'd) (mem. op., not designated for publication). We overrule point two.

## IV. JURY CHARGE

In his third point, Appellant argues that the trial court erred by failing to instruct the jury on the lesser-included offense of misdemeanor DWI, which he requested at trial. As such, we must determine if (1) the requested offense actually is a lesser-included offense of the offense charged and (2) if so, whether the context of the entire record contains "some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense." *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see also Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Although evidence that is more than a scintilla is sufficient to entitle a defendant to a lesser charge, "[i]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998). "Rather, there must be some evidence directly germane to the lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Id.* Therefore, a requested, lesser-included instruction is required only "if some evidence refutes or negates other evidence establishing the greater offense or if the evidence

11

presented is subject to different interpretations." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011).

The State concedes that misdemeanor DWI is a lesser-included offense of felony DWI. But the State argues Appellant cannot meet the second part of the test because there is no evidence in the record "that negates or refutes the two prior DWI convictions entered into evidence by the State, establishing the greater offense." To establish some evidence that Appellant was guilty only of misdemeanor DWI, Appellant relies on R. Wallace's offense report in which he noted that Appellant was arrested for "DWI second and not DWI felony."[7] When the offense report was presented to the district attorney, it indicated that Appellant had committed misdemeanor DWI—Appellant had one prior DWI conviction when he was arrested on June 12, 2014, not two. But the resulting indictment, which was prepared by the State and presented by the grand jury, reflects that Appellant had two prior convictions for misdemeanor DWI: one from July 8, 2002, and one from December 2, 2003. *See generally* Tex. Code Crim. Proc. Ann. arts. 20.19–.22 (West 2015) (providing for preparation of indictment after grand jury's vote and presentment of indictment by grand jury). At trial, Appellant did not object to the admission of the certified judgments from his two prior DWI convictions.

---

[7]The offense report itself was not admitted into evidence, but W. Wallace had reviewed R. Wallace's report for accuracy before it was submitted to the district attorney and briefly testified about the report.

Appellant points to no evidence that he was not in fact convicted of the two DWI offenses that were presented by the State at trial. These convictions were linked to Appellant through his fingerprints, which were included as part of the prior judgments. These two prior convictions, introduced before the jury and without objection, were not "subject to different interpretations." *Sweed*, 351 S.W.3d at 68. Although R. Wallace's offense report indicated that at the time of Appellant's arrest, R. Wallace believed Appellant had only one previous DWI conviction, the resulting indictment and the evidence introduced at trial without objection showed that Appellant had been twice previously convicted of DWI. The offense report was no more than a scintilla of evidence that Appellant had been convicted of only one prior DWI and, thus, could only be guilty of the lesser-included offense of misdemeanor DWI. Accordingly, Appellant has failed to meet the second prong of the applicable test, and the trial court did not err by failing to instruct the jury regarding misdemeanor DWI. *See, e.g.*, *Gonzales v. State*, No. 11-11-00359-CR, 2014 WL 2767112, at *5 (Tex. App.—Eastland June 12, 2014, no pet.) (mem. op., not designated for publication); *Freeman v. State*, 413 S.W.3d 198, 207 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Guess v. State*, 419 S.W.3d 361, 367–68 (Tex. App.—Tyler 2010, pet. ref'd); *Carter v. State*, No. 14-08-00662-CR, 2009 WL 2998534, at *3 (Tex. App.—Houston [14th Dist.] Aug. 11, 2009, pet. ref'd) (mem. op., not designated for publication); *cf. Moore v. State*, 154 S.W.3d 703, 713 (Tex. App.—Fort Worth 2004, pet. ref'd) (holding offense report indicating offense intent was reckless did not warrant

lesser-included instruction on negligent intent because grand jury indicted appellant with knowingly committing offense).  We overrule Appellant's third point.

## V.  CONCLUSION

Having overruled Appellant's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 5, 2017