IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-1937-03






RICHARD LEE STADT, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY
 




 

 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and
Meyers, Price, Womack, and Johnson, JJ., joined. Keasler and Hervey, JJ.,
concurred in the result. Cochran, J., did not participate. 



 The court of appeals held that the trial court did not err in instructing the jury on the lesser
included offense of criminally negligent homicide. We affirm.

 Our discussion begins with a summary of the relevant facts. On October 24, 2000, a Harris
County grand jury presented an indictment that charged appellant with manslaughter under Texas
Penal Code § 19.04. The indictment alleged, in relevant part, that 

 Richard Stadt . . . on or about January 31, 2000, did . . . recklessly cause the death of
D. Turner by operating his motor vehicle . . . at an unreasonable speed, by failing to
maintain a proper lookout for traffic and road conditions, by failing to maintain a
single lane of traffic, and by changing lanes in an unsafe manner.


Thus, the indictment alleged four alternate theories of reckless conduct on appellant's part.

 On November 27, 2001, the State brought appellant to trial before a petit jury on his plea of
not guilty. At the guilt stage of that trial, the State, in an effort to prove appellant's guilt, presented
thirteen witnesses and numerous exhibits, including appellant's own written statement. Appellant,
in his defense, presented eight witnesses, including himself, and two exhibits. 

 The evidence presented by the State at the guilt stage, if believed, established the following: 
At approximately 10:40 a.m. on the morning of January 31, 2000, in the City of Spring, appellant
drove an eighteen-wheel tractor-trailer rig southbound in the right-hand lane of Interstate Highway
45. As appellant neared and then drove onto the Spring-Stuebner overpass, he maintained a speed
of approximately 70 miles per hour, although the posted speed limit was 55 miles per hour. The
surface of the highway in the area was "very rough," with "many potholes and grooves" and "dips
and sways." The traffic lanes on the overpass were relatively narrow, and there was no shoulder. 
Instead of a shoulder, there was a concrete barrier just outside the right-hand lane. When appellant
approached the top of the overpass, he "looked at" his rearview mirror, and, within an instant, the
right front wheel of his tractor-trailer rig collided with the concrete barrier. Appellant's tractor-trailer rig then ricocheted off the concrete barrier, crossed over the other lanes of traffic and the
highway's median, and hit two vehicles traveling northbound. In one of those vehicles was Dale
Turner, who was killed instantly. Appellant survived the accident and, afterward, told an Emergency
Medical Services worker at the scene that "he had taken some medication [earlier that morning] and
he was a little bit drowsy."

 Appellant, with his evidence, tried to paint a slightly different picture. The evidence he 
presented at the guilt stage, if believed, established the following: On the evening of January 30,
2000, appellant, who was a truck driver for General Packaging Corporation in Richardson, went to
bed at his home at around 10:00 p.m., which, for him, was an hour later than usual. He awoke the
next morning at around 4:00 a.m. After taking a prescription medication for his high blood pressure
and doing a few other routine things, he left for work. He arrived at the General Packaging
Corporation truck yard at around 5:00 a.m., at which time he performed a routine safety check of his
eighteen-wheel tractor-trailer rig. At around 6:00 a.m., appellant drove his tractor-trailer rig out of
the truck yard and began his usual run to Houston on the Interstate. At around 7:00 a.m., he stopped
his rig in Corsicana for re-fueling. During that re-fueling stop, he napped inside the rig. At around
8:00 a.m., appellant resumed his run to Houston. A short time later, near Madisonville, he pulled
off the Interstate and performed a routine safety check of his rig's tires. He then resumed his run to
Houston. As he neared and then drove onto the Spring-Stuebner overpass, a stretch of highway with
which he was familiar, he reduced his speed but stayed within the flow of traffic. He then made "a
quick check of [his] mirrors just to see what was around [him]." As appellant's gaze turned forward
again, his right front wheel impacted the concrete barrier just to the right of his traffic lane. He had
"no clue why it happened."

 At the conclusion of the presentation of the evidence at the guilt stage, the trial court
presented its proposed jury charge to both parties. The proposed charged authorized the jury to
convict appellant of manslaughter, as alleged alternatively in the indictment, or the lesser included
offense of criminally negligent homicide. (1) Appellant objected to the inclusion of criminally
negligent homicide in the charge, but the trial court overruled the objection. The jury later found
appellant not guilty of manslaughter but guilty of criminally negligent homicide. The jury assessed
appellant's punishment at imprisonment for three years, probated.

 On direct appeal, appellant argued that the trial court erred in instructing the jury on
criminally negligent homicide "because no evidence permitted the jury to rationally find that if [he]
was guilty, he was guilty only of criminally negligent homicide." Appellant, citing Arevalo v. State,
970 S.W.2d 547 (Tex.Crim.App. 1998), argued in particular that an instruction on criminally
negligent homicide was not warranted because there was no evidence adduced at trial that "refute[d]
or negate[d] each and every one of the four alternate theories of manslaughter" alleged in the
indictment and on which the jury charge authorized the jury to convict. 

 The court of appeals rejected appellant's argument and held that the trial court did not err in
instructing the jury on the lesser included offense of criminally negligent homicide. Stadt v. State,
120 S.W.3d 428, 440 (Tex.App.-Houston [14th Dist.] 2003). We granted appellant's petition for
discretionary review in order to determine whether the court of appeals erred. See Tex. R. App.
Proc. 66.3(c).

 A trial court may instruct the jury on a lesser included offense if (1) the offense in question
is a lesser included offense under Article 37.09 of the Texas Code of Criminal Procedure (2) and (2)
there is some evidence that would permit a rational jury to find that the defendant is not guilty of the
greater offense but is guilty of the lesser included offense. Hayward v. State, 158 S.W.3d 476, 478
(Tex.Crim.App. 2005); Moore v. State, 969 S.W.2d 4, 8 (Tex.Crim.App. 1998). This two-prong test
is usually known as the Rousseau test, after the case in which the test was first stated in that exact
form. See Rousseau v. State, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). It is the second prong
of the Rousseau test that is the subject of this appeal.

 Appellant's reliance on Arevalo v. State, 970 S.W.2d 547, is misplaced. In that case, we held
that, "if sufficient evidence of more than one theory of the greater offense is presented to allow the
jury to be charged on alternate theories [of the greater offense], the second prong of the [Rousseau]
test is satisfied only if there is evidence which, if believed, refutes or negates every theory which
elevates the offense from the lesser to the greater." In this case, what elevated the offense from the
lesser to the greater was the culpable mental state.

 Under Texas Penal Code § 19.04, a person commits manslaughter "if he recklessly causes
the death of an individual." Under Texas Penal Code § 6.03(c), 

 [a] person acts recklessly . . . with respect to . . . the result of his conduct when he is
aware of but consciously disregards a substantial and unjustifiable risk that . . . the
result will occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person would
exercise under all the circumstances as viewed from the actor's standpoint.


Under Texas Penal Code § 19.05, a person commits criminally negligent homicide "if he causes the
death of an individual by criminal negligence." Under Texas Penal Code § 6.03(d), 

 [a] person acts with criminal negligence . . . with respect to . . . the result of his
conduct when he ought to be aware of a substantial and unjustifiable risk that . . . the
result will occur. The risk must be of such a nature and degree that the failure to
perceive it constitutes a gross deviation from the standard of care that an ordinary
person would exercise under all the circumstances as viewed from the actor's
standpoint.


 The offense of manslaughter "involves conscious risk creation, that is, the actor is aware of
the risk surrounding his conduct or the results thereof, but consciously disregards it." Lewis v. State,
529 S.W.2d 550, 553 (Tex.Crim.App. 1978). The offense of criminally negligent homicide, on the
other hand, "involves inattentive risk creation, that is, the actor ought to be aware of the risk
surrounding his conduct or the result thereof [but fails] to perceive the risk." Ibid. Thus, criminally
negligent homicide is a lesser included offense of manslaughter, because the two offenses differ only
in that criminally negligent homicide requires a less culpable mental state. Aliff v. State, 627 S.W.2d
166, 171 (Tex.Crim.App. 1982); Art. 37.09(3), fn. 2, supra.

 The question before us is not whether there was some evidence presented at appellant's trial
that would permit a rational jury to find that he was not guilty of each and every alternate theory of
manslaughter alleged in the indictment but whether there was some evidence presented at appellant's
trial that would permit a rational jury to find that he possessed the culpable mental state of criminal
negligence rather than recklessness. After reviewing the record, we conclude that there was such
evidence presented at appellant's trial. 

 At appellant's trial, evidence was presented to the effect that (1) on the night before the
accident, he slept less than he usually slept; (2) on the morning of the accident, he took a prescription
medication that made him drowsy; (3) on the morning of the accident, he performed multiple safety
checks of his vehicle; (4) at the time of the accident, he was driving approximately fifteen miles per
hour over the posted speed limit; (5) at the time of the accident, he was already familiar with the
narrow lanes and poor road conditions on the Spring-Stuebner overpass; (6) at the time of the
accident, he took his eyes off the road for a moment in order to look into his rearview mirror; (7) at
the time of the accident, he had "no clue" as to why the accident happened; and (8) Dale Turner's
death resulted from the accident. Given this evidence, a rational jury could have found that appellant
was not guilty of manslaughter as alleged in the indictment and included in the charge but was
nevertheless guilty of criminally negligent homicide. (3) That is, a rational jury could have found that
(1) appellant's conduct caused the death of Dale Turner; (2) appellant ought to have been aware of
a substantial and unjustifiable risk of death created by his excessive speed and his failure to maintain
a proper lookout on a highway with narrow lanes and poor road conditions; (3) appellant, though
normally safety-conscious, was not aware of the substantial and unjustifiable risk of death created
by his conduct, due either to lack of sleep or drowsiness caused by medication or perhaps just simple
inattentiveness; and (4) appellant's failure to perceive the risk created by his conduct constituted a
gross deviation from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from appellant's viewpoint. In short, given the evidence adduced at
appellant's trial, the second prong of the Rousseau test was met, as the court of appeals held.

 We affirm the judgment of the court of appeals.


DELIVERED NOVEMBER 23, 2005

PUBLISH
1. Criminally negligent homicide is a lesser included offense of manslaughter. See 
discussion, infra.
2. Article 37.09 provides:


 An offense is a lesser included offense if: 

 (1) it is established by proof of the same or less than all the facts required to
establish the commission of the charged offense;

 (2) it differs from the offense charged only in the respect that a less serious injury
or risk of injury to the same person, property, or public interest suffices to
establish its commission;

 (3) it differs from the offense charged only in the respect that a less culpable
mental state suffices to establish its commission; or

 (4) it consists of an attempt to commit the offense charged or an otherwise
included offense. 
3. We hasten to add that, given the evidence at trial, a rational jury could have found
appellant guilty of manslaughter. That is, in this case, a rational jury could have viewed the
evidence in either of two ways, one supporting a finding of guilt of manslaughter, with its higher
culpable mental state, the other supporting a finding of guilt of criminally negligent homicide,
with its lower culpable mental state.